**VALLEJO et al. v. AMERICAN R. CO. OF PORTO RICO et al.**

No. 4510.

United States Court of Appeals
First Circuit.

April 26, 1951.

Mariano Acosta Velarde, San Juan, P. R. (Daniel Pellon Lafuente, San Juan, P. R., on brief), for appellants.

L. E. Dubon, San Juan, P. R. (E. Ramos Antonini and V. Gutierrez Franqui, San Juan, P. R., on brief), for appellees.

Before MARIS, WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment entered in the United States District Court for the District of Puerto Rico on April 26, 1950, disallowing the claims of the appellants for pensions from the American Railroad Company of Porto Rico.

Jurisdiction is asserted under 28 U.S.C.A. §§ 1291 and 1294, and the Bankruptcy Act, §§ 24, sub. a, and 25, sub. a, 11 U.S.C.A., §§ 47, sub. a, 48, sub. a and the General Orders in Bankruptcy 36 and 37, 11 U.S.C.A. following section 53, and Rules 73–75 of the Federal Rules of Civil Procedure, 28 U.S.C.A. and Rule 11 of this Court.

The debtor, American Railroad Company of Porto Rico, is the operating company of the railroad of the Compania de los Ferrocarriles de Puerto Rico which is the owner of the property and franchise. The Compania Ferroviaria de Circunvalacion is the holding company of the other two. Appellants were employees of the operating company, American Railroad Company of Porto Rico, which company, together with the Compania de los Ferrocarriles de Puerto Rico were in reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq.

The district court disallowed the claims for pensions filed by appellants in said reorganization proceedings.

The appellants contend that the court erred in finding that claimants-appellants voluntarily resigned their employment or office with the American Railroad Company of Porto Rico, in finding that they have no vested right to receive a pension and in disallowing their claims for pensions.

The main question in this appeal is whether or not the appellants were entitled to a pension upon the termination of their

employment, having already qualified as to age and length of service with the company.

The district court in its "Findings of fact, conclusions of law and opinion" filed November 29, 1949, stated in part:

"XI.

"The Court is going to find according to the terms of the original Pension Plan dated April 11, 1923, that the pension system therein provided for constituted a privilege or gratuity which might be withdrawn either individually or collectively at any time that the company saw fit. However, in 1944 after the Collective Bargaining Agreement was entered into between the American Railroad Company and the Union de los Obreros Unidos de las Ferrovias de Puerto Rico, the pension system or plan of the American Railroad Company was changed by Mr. Emilio S. Jimenez, the General Manager of the American Railroad Company, insofar as it affected non-union employees of the railroad company. Under the Pension Plan as changed by Mr. Jimenez, the pension system was made obligatory as to all employees of the Company whether they belonged to the Union or not, and Mr. Jimenez advised the Assistant Manager, Mr. Etienne Totti, and other department heads, that the pension system would be obligatory to the company and extend to all employees of the company.

"XII.

"That the American Railroad Company having changed the original pension system from an optional pension system to an obligatory pension plan, covering all employees, it accepted the consequences of said act regardless of the economic conditions.

"Thus the claimants may be separated into three classes, to wit:

"(a) those claimants who had been retired and were receiving the pension at the time of the filing of the reorganization proceedings and prior to the appointment of the Trustee;

"(b) those claimants who resigned on August 6, 1947 immediately after the Trustee had been appointed; and,

"(c) claimants who were dismissed by the Trustee on August 16 and 18, 1947.

"During the course of the hearings upon these pension claims, the main question arose as to whether or not the Pension Plan was a gratuity or was obligatory. This question has been decided by the Court in its findings. This, however, does not finally dispose of the question as no comment has been made by counsel on either side in connection with several other provisions which are contained in the Pension Plan, to wit, Circular of the Directors No. 379 of April 11, 1923, and the Court will ask counsel to comment and submit whatever authorities they desire to submit upon the effect of the following provisions of said Circular which are as follows:

" 'It is well to clarify that such persons as may have resigned or abandoned their employment in the past, or who shall resign or abandon their employment voluntarily in the future, shall, of course, be taken as having resigned also the privilege of the pension and shall have no right thereto. If such employees should return to the employment of the company, their term of employment shall begin to count from the date of their employment.'

" 'Nothing herein contained shall be construed to limit in any way or manner the right that the company has to dismiss its employees at any time when the interest of the company shall so require, and the employees so dismissed from their employments shall have no right to the pension privilege, unless they are dismissed for pension purposes.'

" 'The company shall have the right at any time to reduce the pension payments proportionately, to discontinue them or to make such alterations and establish such limitations as it may deem convenient and timely.'

"There is not much question in the Court's mind as to the first class of claimants, that is, those claimants who had already retired and were receiving the pensions at the time of the appointment of the Trustee. The Court has not concluded, however, as to the rights of the claimants who fall in the last two categories, particu-

larly in view of the above mentioned provisions of the Pension Plan and it is upon this particular phase of the matter that the Court desires counsel's advice.

"In short, the Court desires to know what effect, if any, is to be given to the above mentioned provisions of the Pension Circular by the Court, insofar as they affect the claims of the claimants who fall in the last two categories."

In its later opinion and order of April 26, 1950, the district court concluded, however, that though some of the pension claims were good yet the claims of the appellants were to be denied because they were dismissed by the trustee for reasons of economy or because they voluntarily resigned and their resignations were accepted also for reasons of economy.

The court said in its "Additional and supplementary findings of fact, conclusions of law, opinion and order" filed April 26, 1950:

"I hold, however, that this change in policy did not take away from the company the right expressly reserved in the pension circular to refuse to pay a pension to any employee or employees who although qualifying as to age and years of service, should resign or abandon their employment voluntarily, or who should be dismissed at any time when the interests of the company should so require, unless the latter should have been dismissed for pension purposes.

"The wording of the pension circular is too clear to that effect to admit any other interpretaion.

"As to those employees who were so dismissed, or whose resignations were tendered and accepted, I find that although they qualified as to age and period of service, they did not qualify for pension since they had not complied with all the terms of the pension plan as those terms are expressly contained in the pension circular.

"Should I hold otherwise, I would be holding that, upon the change in policy effected by the management in 1944, all the conditions of the pension circular were abrogated and rendered inoperative, and that thereafter all employees who should attain a certain age and who should have rendered services for a certain period of years would be unqualifiedly entitled to receive a pension. If I should do so, I would, by judicial determination, be rendering inoperative the express provisions of the pension circular which, because they are not inconsistent with the obligatory feature of the pension plan, must be interpreted to mean exactly what they say.

"I also find that in no case was the right to receive a pension made a part of the contract of employment of those claimants who were either dismissed by the Trustee or who resigned their respective employments. Neither did any of said claimants receive payment of their pensions from the company or from the Trustee at any time. I, therefore, find that said claimants have no vested right to receive a pension, and that the Trustee was fully justified in refusing to pay a pension to them."

In attempting to justify this holding of the district court, the appellees argue in their brief that the collective bargaining agreements merely obligated the company *"to maintain a system of retirement with pension* for its employees within certain qualifications, all of whom would receive, *after being retired,* certain pension benefits."

This argument seems to us to be unrealistic and ignores the ordinary meaning of the word "obligatory".

After the collective bargaining agreements were executed, obligating the company to maintain a system of retirement with pension for certain qualified employees, the company could not on its own accord or by its unilateral act deprive an employee, qualifying as to age and service, of his pension. In short, the obligatory feature of the new pension system superseded the non-obligatory feature of the pension system set up by the company in Circular No. 379, April 11, 1923.

The appellants did everything they could to qualify for the plan. It merely remained for the company to pay them their pensions.

The pension plan being obligatory, as the district court held it to be, the obliga-

tion must run to someone. It is only consistent to hold that the obligation runs to each employee who qualifies through age and service and not that the company was obliged merely to maintain a pension system and no more. Under appellees' view, one is not a beneficiary unless he has the status of being discharged for pension purposes. This status is established, according to that view, by the unilateral act of the company. This contention cannot be accepted if we regard the pension plan as obligatory.

To give meaning to this obligatory pension system, the appellants must be considered qualified and entitled to pensions upon satisfying the requirements as to age and service. See Sigman v. Rudolph Wurlitzer Co., 57 Ohio App. 4, 11 N.E.2d 878; Willoughby Camera Stores v. Com'r of Internal Rev., 2 Cir., 125 F.2d 607.

This holding applies to all appellants who qualified through age and service and it is immaterial if some resigned and others were discharged.

The collective bargaining agreement of 1945 states: "* * * that any employee who shall have complied with the requirements for retirement with a pension, may continue to work for the company should he so elect and the company deem it convenient: * * *."

This surely is indicative of the fact that the requirements for pension were merely of age and service set out in the collective bargaining agreement. Upon meeting these requirements an employee's pension rights had matured with the further proviso, favorable to the employee, that he might continue as an employee with the consent of the company.

The so-called resignations here can hardly be called voluntary so as to amount to a forfeiture of pension rights. If not actively sought by the trustee they were speedily accepted. In any event each of the so-called letters of resignation were conditioned on the claim for a pension.

The appellants were the only employees to whom pensions were denied. It is abundantly clear from the record that all employees, whether members of the union or not, were to be treated equally. The record discloses that until the trustee took over, nobody who qualified under the plan was denied a pension and that up to 1947 when the trustee came in this pension plan was in operation and payments were being made. The interpretation of the pension rights of the employees made by the General Manager who instituted and later changed the pension plan making it obligatory is consistent with and fortifies the appellants' position.

The cases cited by appellees are not in point as they involve governmental-public pensions, are not concerned with an obligatory plan such as we have here or are otherwise distinquishable.

We have considered the appellees' petition to dismiss the appeal on the ground that it was filed out of time. It appears from the record that the notice of appeal was filed on the thirty-seventh day after the entry of judgment. However, it also appears that the notation on the judgment mailed by the clerk to the attorneys for the parties merely stated, "Filed April 26, 1950."

The appellants contend that said notation was not "written notice to the aggrieved party of the entry of the judgment" as provided in Title 11 U.S.C.A. § 48, and that they, therefore, had forty days to appeal instead of thirty days. Because of the ambiguity existing here between "filed" and "entry of the judgment" we are inclined to agree with appellants' contention that on the facts here the appeal was timely. As to the distinction between "filing" and "entry" see Neely v. Merchants Trust Co. of Red Bank, N. J., 3 Cir., 110 F.2d 525.

The petition to dismiss the appeal is denied.

The district court's judgment disallowing the claims of the appellants is reversed and the case is remanded to that court for further proceedings in accordance with this opinion; the appellants recover costs on appeal.