**LOCAL NO. 30, PHILADELPHIA LEATHER WORKERS' UNION OF the AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, AFL–CIO**

v.

**HYMAN BRODSKY & SON CORP.**

Civ. A. No. 34664.

United States District Court
E. D. Pennsylvania.

April 28, 1964.

Alan R. Howe, Edward Davis, Philadelphia, Pa., Cammer & Shapiro, New York City, for plaintiff.

James L. Price, Steinberg, Richman, Price & Steinbrook, Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This lawsuit was precipitated when the defendant company permanently discontinued all its operations on three days notice, thereby terminating the employment of some 70 employees represented by the plaintiff union. The union then served upon the company a demand for arbitration, based upon its collective bargaining agreement, of a number of issues [1] arising from the company's discontinuance of its operations. Upon the company's refusal to arbitrate, the union filed its complaint in this suit in which it asked certain action from the court in regard to a pension fund and an order requiring the defendant to arbitrate the issues set forth in the demands.[2] These issues have now been boiled down to three, to wit: severance pay, the employer's action in shutting down its plant and its failure to give notice of the shut-down, and the claimed "Pension Plan."

Presently before the court are the defendant's motion to dismiss on the ground that the complaint fails to state a cause of action upon which relief can be granted and the plaintiff's motion for summary judgment, together with a supporting affidavit. The motion to dismiss presents the defendant's contention that none of the issues referred to above are arbitrable and the motion for summary judgment that they all are.

The arbitration clause of the collective bargaining agreement, or so much of it as is pertinent, is as follows: "In the event of * * * a dispute concerning the meaning or application of any provision of this agreement * * * either party may refer the same to a Board of Arbitration * * *."

The plaintiff's contention as to the law governing arbitration articles in labor contracts is, in substance, as follows: The courts will compel arbitration under Section 301 of *any* dispute where the collective bargaining agreement contains a "No Strike" clause and a broad arbitration clause and which does not by its terms exclude the dispute. This proposition derives from a statement by Mr. Justice Douglas in the opinion of the Supreme Court in United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 584, 585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409, " * * * In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."

The agreement in the present case has what may properly be called a "broad" arbitration clause (although that term is not definitive) and it contains no clause excluding from arbitration any of the three issues referred to. The plaintiff contends in effect that under the above principle the question whether any of the points for which arbitration is demanded is arbitrable at all is one of the matters to be determined by the arbitrator. I think that the plaintiff has taken too broad a view of the Warrior case, supra. The quoted excerpt from the opinion indicates plainly enough that even in the absence of an express exclusion arbitration will be denied provided "the most forceful evidence of a purpose to exclude" is adduced.

The latest pronouncement of the Supreme Court upon the question is to be found in John Wiley & Sons, Inc., v. Livingston, March 30, 1964, 376 U.S. 543,

---

1. Set out with greater specificity in a later demand.

2. It is not suggested that the company's going out of business was a step taken in anything but good faith, and it is not charged that it was a maneuver for the purpose of avoiding obligations under the collective bargaining agreement.

84 S.Ct. 909, 11 L.Ed.2d 898, in which the Court, quoting from Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462, said, " 'Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.' " The arbitration clause in the collective bargaining agreement in the Wiley case is even broader than the corresponding clause in the present agreement, covering as it does not only disputes concerning the meaning or application of the provisions of the agreement but "any and all acts or omissions claimed to have been committed by either party during the term of this agreement."

The arbitration clause in the present case is limited to disputes concerning the meaning or application of provisions of the contract and it does not include the matters covered by the contract of the Wiley case, nor by the even broader agreement in Drake Bakeries, Inc. v. Local 50, American Bakery, etc., Workers, etc., 370 U.S. 254, 257, 82 S.Ct. 1346, 1348, 8 L.Ed.2d 474, which covered "any act or conduct or relation between the parties."

■ Inasmuch as the duty to arbitrate is contractual [3] and since the contract in this case is to arbitrate matters concerning the meaning and application of the provisions of the collective bargaining agreement, we must look to that agreement to find provisions concerning whose meaning or application the dispute as to the three points mentioned exists.

■ As to the pension plan dispute, there are provisions in the contract concerning a pension plan. Whether or not the plan ever came into effect or whether or not the union has any claim under it is not a matter for this court. The parties having agreed that both meaning and application of this article shall be submitted to arbitration, it would be improper for me to express my views upon the subject.

■ As to the company's action in shutting down the plant and its failure to give advance warning of its intention to do so, the plaintiff has not been able to point to any provision in the contract that it seeks to have applied or interpreted, and, from an examination of it, I find no provision that could be applied or interpreted. As a result, I cannot find that the parties have agreed to arbitrate this matter.

As to the claim for severance pay because of the employees' loss of their jobs, the same situation is presented—no provision to be applied or interpreted. I, therefore, cannot order this dispute arbitrated.

There have been three collective bargaining agreements. The basic agreement "A" was dated January 1, 1959, and expired by its own terms December 31, 1961. Another agreement "B", also ending December 31, 1961, stating that it supplements and extends the "A" agreement for a two year term beginning January 1, 1960, was entered into, for what reason is not clear. On October 24, 1961, the union notified the company of its "desire to terminate the present contract" and indicated a desire to negotiate with the company for a new agreement. These negotiations resulted in an undated supplement "C" (apparently entered into after December 31, 1961) which recited that it amended, added to, and extended "the presently-existing contract and the Supplemental Agreement thereto which expired as of December 31, 1961." The defendant argues that since at the time of the execution of supplement "C" both existing agreements had expired, the language quoted referred to nothing and, therefore, only the provisions of supplement "C" are in effect. Supplement "C" did not contain any arbitration clause.

■ I cannot agree. Not only is it usually the aim of the parties that col-

---

**3.** "The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." Wiley v. Livingston, supra.

lective bargaining agreements should be continuous, but these parties have expressly stated that they regarded their agreement as an addition and amendment to their prior agreements. They certainly meant this language to be given effect and I, therefore, conclude that the contract between the parties consists of the basic contract "A", supplement "B", and supplement "C".

Appropriate orders may be submitted.