[L. A. No. 27843. In Bank. June 23, 1967.]

BUTCHERS' UNION LOCAL 229 et al., Plaintiffs and Appellants, v. CUDAHY PACKING COMPANY, Defendant and Respondent.

Brundage, Hackler & Williams and Jerry J. Williams for Plaintiffs and Appellants.

Gray, Cary, Ames & Frye, Josiah L. Neeper, James K. Smith and Gregory B. Hovendon for Defendant and Respondent.

TOBRINER, J.—The union petitioned for an order compelling the company to arbitrate a pension eligibility grievance, and for appointment of an arbitrator, pursuant to a section of a collective bargaining agreement providing for arbitration of a "disagreement arising within the terms of this Agreement." Finding that the company was engaged in interstate commerce, and purporting to apply federal substantive law, the trial court nevertheless denied the petition. The court concluded that the dispute involved an interpretation of "the rules and regulations of the Pension Fund," which "constitute a written collateral agreement to the collective bargaining agreement that makes it clear that this area of dispute is not a matter for arbitration." We hold that the trial court failed to apply to this issue the required federal standard, which commands a state court to order arbitration unless, after resolving all doubts in favor of that procedure, it can determine "with positive assurance" that the dispute is not covered by the arbitration clause.

Since this case turns upon the legal effect and scope of the arbitration provision of the collective bargaining contract of the union and employer, entered into on May 23, 1960, we set it forth: "In the event of a disagreement arising within the terms of this Agreement [the parties shall first resort to the grievance procedure described, and then] if no agreement is reached at this latter meeting, the parties shall submit the matter to an Arbitrator. . . . This procedure shall apply to all disputes [with inclusions pertaining to discharge and suspension, and exceptions pertaining to management rights] . . . . While a dispute is in the process of discussion and/or arbitration under the terms of this section, there shall be no cessation of work or lockout. . . ."

In this collective bargaining contract the parties agreed that the company would not reduce benefits in the employees' pension fund of the Cudahy Packing Company, effective January 1, 1927, as previously amended and as amended by the collective bargaining negotiations leading to the 1960 contract.[1] The parties expressed their negotiated changes as appendix I,[2] which they made a part of the collective bargaining agreement.

Appendix I provided, *inter alia,* for "vested pensions" as follows: "An employee who is covered by the Agreement and whose employment is terminated with the Company under circumstances which entitle him to separation pay at the time when he has (A) attained age 55, and (B) completed 25 or more years of credited service will be entitled to a pension upon his attaining age 65 . . . ." Section 7 likewise gave to the employee the option of electing a pension or accepting separation pay, provided that he exercised such election in

---

[1]Thus section 16 of the agreement provided: "The Company agrees that during the life of this Agreement pension benefits set up under the pension plan of the Company now in effect and as hereby amended will not be reduced, and eligibility requirements stated in the pension plan, as hereby amended, will not be changed, except as indicated in Appendix I of this Agreement."

[2]Appendix I, so far as it affects the present issue, declared: "The following is a description of the changes to be made, . . . in the Rules and Regulations governing The Employees' Pension Fund of the Cudahy Packing Company, as last amended, effective January 1, 1957, . . . in-so-far as said Rules and Regulations apply to employees who are within the Bargaining Unit covered *by the Agreement, of which this Appendix I forms a part. Except as provided herein, all provisions of said Rules and Regulations as amended January 1, 1957, shall remain in effect.* The foregoing. however, shall not be construed as precluding the Company from amending said Rules and Regulations to extend the following changes to other groups of employees of the Company." (Italics added.)

writing within 18 months after termination of his employment.

Under the rules and regulations in effect before the 1960 agreement a pension board administered the pension fund. The board consisted of representatives appointed by the company; the members served so long as they continued in the employ of the company; section VI(g) provided that "The decision of the Pension Board upon any question of fact, in. terpretation, definition or administration under the plan shall be conclusive and, without limiting the generality of the foregoing, the Pension Board is specifically empowered to determine at its discretion what constitutes continuous service and substantially full time employment hereunder. . . ."

The grievance arose when the company closed its San Diego plant and terminated the employment of one Saunders. Saunders, having been in the company's employment for 25 years, came within six working days of the attainment of the age of 55 years. The union requested "that a pension be paid to Mr. Saunders in accord with the provisions of [the collective] bargaining agreement. . . ."

Specifically the claim stated: "Your records will show that Mr. Saunders has completed more than 26 years of credited service. They will also show that Mr. Saunders was 55 years of age on May 3, 1961, and that he worked at your San Diego location through April 1, 1961, at which time he was paid for three weeks' vacation, pursuant to the Agreement, which paid him through April 21, 1961. Thus at the effective date of his termination—April 21, 1961—he was but 6 working days short of his having been on the payroll until the age of 55." In these circumstances, the union said, "it is evident that Mr. Saunders . . . has substantially performed the contract. . . ." The sole question of the dispute, according to the union's claim, "is whether the age qualification set out in subparagraph (a) [of section 7 of the appendix to the collective bargaining agreement] has been met."

The company replied that its only "obligation in respect to pensions, as set forth in Section 16 [see fn. 1], is to continue the pension plan of the Company and see to it that pension benefits will not be reduced and eligibility requirements will not be changed, except as indicated in Appendix I [see fn. 2]. . . . The pension program is administered by a pension board of five members who are also the trustees under the

pension trust. The pension board, you will observe under sub-paragraph (g) on page 17 [section VI(g), quoted *supra* at p. 4] are empowered to make a decision 'upon any question of fact, interpretation, definition or administration under the plan' and such decisions shall be conclusive. Sub-section (1) on page 8 [of the rules and regulations] covers the matter of a vested pension . . . . In our opinion, the arbitrator, under the Collective Bargaining Agreement, has the power to determine only whether the Company has or has not carried out *its* obligations in respect to the pension plan [and] has no power or authority to decide that the pension board should or should not grant a pension in any particular case.''

In brief, the employer contends that although disputes arising from the collective bargaining contract are subject to arbitration, this controversy emanates from the pension plan, which is entirely separate from the contract. The union, however, urges that the dispute involves the interpretation of a provision of the collective bargaining contract creating vested pensions, and that the dispute therefore falls under the clause, ''a disagreement arising within the terms of this Agreement,'' contained in the arbitration provision.

We examine the cases to establish (1) that the instant matter must be decided according to the federal standard, (2) that the federal standard requires that a state court order arbitration unless, after resolving all doubts in favor of that procedure, it can determine ''with positive assurance'' that the arbitration clause does not cover the dispute, and (3) that the federal courts, confronting issues of pension eligibility similar to the instant one, have broadly applied the arbitration provision of the contract to cover the dispute.

 Since the activities of the company affect interstate commerce, the issue of arbitrability must be resolved under the substantive federal law fashioned by the federal courts pursuant to the command of section 301 of the Labor Management Relations Act of 1947. (29 U.S.C. § 185(a) (1964).) In *Textile Workers Union* v. *Lincoln Mills* (1957) 353 U.S. 448 [1 L.Ed.2d 972, 77 S.Ct. 912], the United States Supreme Court held that in enacting section 301(a), Congress promulgated more than a mere jurisdictional statute; it authorized the federal courts to draw together a body of federal law for the enforcement of collective bargaining agreements within the ambit of congressional power. The court declared that ''state law, if compatible with the purpose of § 301, may be

resorted to in order to find the rule that will best effectuate the federal policy," but noted that "any state law applied, however, will be absorbed as federal law. . . ." (*Id.* at p. 457 [1 L.Ed.2d at p. 981].) In accord with the holding of *Lincoln Mills,* we said in *O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 486 [30 Cal.Rptr. 452, 381 P.2d 188], that although "state courts exercise concurrent jurisdiction with federal courts [they must], in adjudicating an action which could have· been brought in the federal courts under section 301 of the Labor Management Relations Act, apply federal law."

Congress strongly expressed its policy favoring arbitration in section 203(d) of the Labor Management Relations Act: "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. . . ." (29 U.S.C. § 173(d) (1964); see *United Steelworkers of America* v. *Warrior & Gulf Nav. Co.* (1960) 363 U.S. 574, 582 [4 L.Ed. 2d 1409, 1417, 80 S.Ct. 1347].) Section 301 was reported by the Senate Labor Committee to be aimed at securing "mutual responsibility necessary to vitalize collective bargaining agreements," by prescribing "an effective method of assuring freedom from economic warfare for the term of the agreement." (S. Rep. No. 105, 80th Cong., 1st Sess., pp. 16-17; see *Charles Dowd Box Co.* v. *Courtney* (1962) 368 U.S. 502, 509 [7 L.Ed. 2d 483, 62 S.Ct. 519]; *Textile Workers Union* v. *American Thread Co.* (D. Mass. (1953) 113 F.Supp. 137, 141.)

Under federal law, the function of a court in deciding whether a dispute is subject to arbitration "is confined to ascertaining whether the party seeking arbitration *is making a claim which on its face is governed by the contract.*" (Italics added.) (*United Steelworkers of America* v. *American Mfg. Co.* (1960) 363 U.S. 564, 568 [4 L.Ed.2d 1403, 1407, 80 S.Ct. 1343].) "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor of coverage.*" (Italics added.) (*United Steelworkers of America* v. *Warrior & Gulf Nav. Co., supra,* 363 U.S. 574, 582 [4 L.Ed.2d 1409, at p. 1417].)

The policy bases of the rule are unmistakable: "One cannot reduce all the rules governing a community like an industrial

plant to fifteen or even fifty pages. Within the sphere of collective bargaining, the institutional characteristics and the governmental nature of the collective-bargaining process demand a common law of the shop which implements and furnishes the context of the agreement. We must assume that intelligent negotiators acknowledged so plain a need unless they stated a contrary rule in plain words." (Cox, *Reflections Upon Labor Arbitration* (1959) 72 Harv.L.Rev. 1482, 1499.) "[T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise . . . ." (*United Steelworkers of America* v. *Warrior & Gulf Nav. Co., supra,* 363 U.S. 574, 581 [4 L.Ed.2d 1409, at p. 1416].)

Pursuant to the Supreme Court policy that so deeply favors arbitration, a number of federal courts have ordered the arbitration of disputes involving eligibility of employees under pension plans. These courts have broadly applied the arbitration provision of the collective bargaining contract to cover *any* dispute between the parties even though it originates under a pension plan or analogous fringe benefit. Indeed, in enforcing arbitration provisions in a situation in which the employer closes his plant, these courts have recognized that rights to fringe benefits may survive termination of the employment relationship, and that the effect of the arbitration provision thereby extends beyond even the life of the collective bargaining agreement.

*Goodall-Sanford, Inc.* v. *United Textile Workers* (1st Cir. 1956) 233 F.2d 104, presented the issue of the pension eligibility of employees whose termination of employment foreclosed formal fulfillment of the requirements. The collective bargaining contract established continuous employment requirements for eligibility for various fringe benefits, including pensions; the contract gave management the right to terminate employment "where an entire operation has been discontinued." The arbitration clause applied to "any dispute which relates solely to the meaning and application of this Agreement or any individual grievance. . . ." The court held the grievance arbitrable under the provision in the collective bargaining agreement which established the pension benefits.

*Butte Miners Union* v. *Anaconda Co.* (D. Mont. 1958)

159 F.Supp. 431, involved the claim of an employee who was retired at age 68 under a mandatory retirement provision of the collective bargaining agreement before his continuous service qualified him for a pension. The union claimed that the company could not force retirement of the employee before he was entitled to a pension. The arbitration clause covered "any grievance or misunderstanding concerning any rule, practice or working condition." "The company refused to submit the dispute to arbitration, taking the position that the terminations were made under the provisions of the pension agreements, and that the pension agreements do not provide for the arbitration of such disputes." (*Id.* at p. 432.) The court concluded that the dispute involved an arbitrable grievance, saying, "The arbitration is not sought under the pension agreements, but under the collective bargaining agreements." (*Id.* at p. 435.)

Illustrative of the wide scope accorded an arbitration provision even after the closing of a plant is *New Bedford Defense Products Div. of Firestone etc. Co.* v. *Local No. 1113 etc. U.A.W.* (D. Mass. 1958) 160 F.Supp. 103. There a collective bargaining agreement afforded vacation benefits to workers employed on a certain date who otherwise met eligibility requirements. The company lost a defense contract and, before the eligibility date, laid off some of its employees, including those who claimed vacation benefits. The arbitration clause covered "any grievance concerning the interpretation or application of this Agreement," with listed exceptions for grievances involving wages and hours. Another section excluded from arbitration issues involving "management of the plant and . . . all other functions normally incident to such responsibility." (*Id.* at p. 106.) Denying the employer the injunctive relief by which it sought to restrain the union from securing an arbitral award, Judge Wyzanski held the issue arbitrable, despite the fact that the contract provided vacation pay under circumstances which plainly required employment on a date when, in this particular instance, the grievants were not employed. █ "Issues do not lose their quality of arbitrability because they can be correctly decided only one way."[3]

---

[3] In a number of other cases, tribunals have found that rights survived the collective bargaining agreement under which they arose, and thus presented arbitrable issues. (*International U., U.A., A. & A.I. Workers* v. *Defiance Industries, Inc.* (N.D. Ohio 1966) 251 F.Supp. 650; *In re Brooklyn Eagle, Inc.* (1959) 32 L.A. 156 [Willard Wirtz, Arb.; sever-

■ The issue before us must be examined in light of these decisions explaining the federal mandate that under a broad labor arbitration clause any grievance involving, on its face, the terms of a collective bargaining agreement is arbitrable. We list the specific reasons which support the conclusion that the instant dispute is arbitrable.

■ (1) *The instant dispute, on its face, involved the interpretation of a provision of the agreement.* The question of the grievant's eligibility for a pension depends upon the interpretation of the term "attained age 55" in section 7 of appendix I. Appendix I sets forth "the changes to be made" in the "Pension Fund Rules and Regulations," and specifies that the appendix "forms a part of the agreement." Section 16 of the agreement, furthermore, expresses the understanding of the parties that the pension benefits will not be reduced and that eligibility requirements will not be changed, "except as indicated in Appendix I of this Agreement." Section 16 independently brings the dispute within the main body of the collective bargaining agreement.

"The function of the court . . . is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." (*United Steelworkers of America* v. *American Mfg. Co., supra,* 363 U.S. 564, 568 [4 L.Ed.2d 1403, at p. 1407].) Such a prima facie claim under the agreement is presented here.

■ (2) *The inclusion of a "no-strike clause" further indicates that the parties intended an all-inclusive coverage of the arbitration provision.* The parties chose an arbitration provision of the type loosely termed a "broad" arbitration provision, in that it applies to "all disputes . . . arising within the terms of this Agreement," with certain listed exceptions, and promises that "there shall be no cessation of work." (P. 2, *supra.*) The agreement does not merely state that the parties settle specified types of grievances by arbitration; rather it implies that *any* given grievance is to be subject to arbitration. Because the parties have established the arbitration process, and committed themselves to refrain from strikes or

ance pay]; *In re Public Ledger, Inc.* (3d Cir. 1947) 161 F.2d 762 [vacation and severance pay]; *Vallejo* v. *American R. Co. of Porto Rico* (1st Cir. 1951) 188 F.2d 513 [pension rights].) Typical decisions giving broad application of arbitration provisions to a dispute involving an insurance plan and a health and welfare program are *N.L.R.B.* v. *Standard Oil Co.* (6th Cir. 1952) 196 F.2d 892, and *Builders Assn. of Kansas City* v. *Greater Kansas City Laborers Dist. Council* (8th Cir. 1964) 326 F.2d 867.

lockouts, that process, at least presumptively, should cover all their disputes.

As the United States Supreme Court has stated, when "an absolute no-strike clause is included in the agreement, then in a very real sense everything that management does is subject to the agreement, for either management is prohibited or limited in the action it takes, or if not, it is protected from interference by strikes." (*United Steelworkers of America* v. *Warrior & Gulf Co., supra,* 363 U.S. 574, 583 [4 L.Ed.2d 1409, at pp. 1417-1418] ; see also *United Steelworkers of America* v. *American Mfg. Co., supra,* 363 U.S. 564, 565, 567 [4 L.Ed.2d 1403, at pp. 1405-1406] ; *Association of Industrial Scientists* v. *Shell Development Corp.* (9th Cir. 1965) 348 F.2d 385, 387-388, fn. 2; *Local Union No. 702 etc. Electrical Workers* v. *Central Illinois Public Service Co.* (7th Cir. 1963) 324 F.2d 920, 921-923; *Local No. 30, Pa. Leather Workers Union* v. *Hyman Brodsky & Son Corp.* (E.D. Pa. 1964) 243 F.Supp. 728, 729.)

█ (3) *The exceptions listed by the arbitration provision do not include the grievance here presented.* The exceptions clause reads : ". . . providing, however, that with the exception of matters relating to suspension or discharge of employees, other prerogatives vested in Management by Section 13 shall not be affected by this clause." Section 13 lists such management rights as "management of the plant and direction of the working forces, including the right to hire, suspend, or discharge for just cause, to assign to jobs, the transfer of employees within the plant, to increase and decrease the working force, to determine the products to be produced or manufactured, the schedule of production and the methods, processes and means of production, and the management of the properties in the traditional manner. . . ." The determination of pension eligibility is *not* a listed exception.

█ (4) *The agreement indicates that the parties expected negotiated provisions to be interpreted by a mutually agreed upon tribunal.* Since the pension provisions of the appendix require interpretation, and since they are benefits no less vital to union members than wages and hours, the appropriate forum for such interpretation would normally be the arbitration board. The parties, and particularly the union, would expect that the content of their agreement would be defined by a tribunal which they have established bilaterally. Because of the requirement of mutual consent to his appointment, the

arbitrator is necessarily responsive to the interests of both sides. On the other hand, the pension board is unilaterally established and composed of only employer representatives.

■ (5) *The procedure for determining equivalent benefits should not be bifurcated.* If we were to hold that the disputed provision does not fall under the arbitration section, we would create an anomaly whereby eligibility for alternative benefits would be determined by different tribunals. The disputed provision states that ''the benefit payable under this Paragraph 7 is to be an alternative to the presently available separation pay . . . .'' Since ''severance pay'' benefits are established by section 21 of the collective bargaining agreement, any issue as to whether an employee qualifies for such pay must clearly come under the arbitration section. In the first instance, the question arises whether ''separation pay'' is the same as ''severance pay.'' Such an issue, so clearly interrelated with the basic contract, cannot be siphoned off to the pension board for final determination.

Other provisions in the agreement, if disputed by the parties, would present analogous problems of jurisdiction bifurcated between the pension board and arbitration. For example, section 1 of appendix I, another pension-rule-to-be, stipulates that in determining eligibility for pensions, '' 'continuous service' means continuous service administered under the Vacation provisions of the Agreement between the parties.'' Although the rules and regulations purport to repose authority in the pension board to interpret ''continous service'' for purposes of pension eligibility (section VI(g), quoted *supra* at p. 4), the arbitration clause clearly places in the arbitrator the authority to interpret ''continuous service'' in any dispute as to vacation provisions. Any dispute involving ''continuous service'' for pension eligibility must coincidentally be subject to arbitration; it would be highly unfair for one employee's service to be deemed ''continuous'' so as to entitle him to vacation benefits, while another employee's identical service is deemed noncontinuous for purposes of pension benefits.

Similarly, if confronted with the claims of two identically situated employees, we cannot logically place under the final authority of the pension board the claim of the one who chooses a pension, while holding arbitrable the claim of the other who chooses separation pay. In order to insure uniformity and to assure the application of the same standards to

both, each must be provided equal access to the grievance machinery, including, if necessary, arbitration. The pension benefit under dispute is an *alternative* to separation pay; private adjudication of the scope of these two benefits, therefore, surely should not be bifurcated.

(6) *Even under ordinary principles of interpretation of contracts, the arbitration clause should prevail over a repugnant provision included only by indirect reference.* (Civ. Code, § 1651.) The employer's position depends upon a construction of the collective bargaining agreement whereby the parties are to be deemed to have displaced the direct application to the disputed provision of the arbitration clause, which they wrote themselves, by indirect reference in the introductory paragraph of the appendix to corollary regulations promulgated by the company alone. The instant dispute involves the interpretation of a term *in the collective bargaining agreement* which is also a rule-and-regulation-to-be. The company would have us turn not to the arbitration provision, where we find a broad presumption of arbitrability of "all disputes," but to the repugnant provision of the existing rules and regulations, which we may reach only through the ambiguous statement in the introductory paragraph of the appendix that all rules and regulations, "except as provided herein," shall remain in effect. We doubt that we should follow so circuitous a route, at odds even with common principles of contract interpretation, to avoid the stated national policy favoring arbitration.

(7) *Taken at best, the company's position is no more than that conflicting provisions repose authority in both the arbitrator and the pension board.* The disputed provision certainly is a part of the collective bargaining agreement. The company may argue that the provision is *also* part of the rules and regulations, and thus subject to interpretation by the pension board. But under such circumstances, the command of federal law is clear. "An order to arbitrate should not be denied unless it may be said *with positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor of arbitration.*" (Italics added.) (*United Steelworkers of America* v. *Warrior & Gulf Nav. Co., supra,* 363 U.S. 574, 582-583 [4 L.Ed.2d 574, at pp. 1417-1418].)

We have set out the decisions of the United States Supreme Court and the federal courts which rest upon a deeply held

conviction that arbitration provisions be broadly applied. Because arbitration substitutes for economic warfare the peaceful adjudication of disputes, and because controversy takes on ephemeral shapes and unforeseeable forms, courts do not congeal arbitration provisions into fixed molds but give them dynamic sweep. We follow the command of the United States Supreme Court that "doubts should be resolved in favor of arbitration." Although the issue here is subject to debate, we surely cannot say with "positive assurance" that the arbitration section does not cover the controversy. We interpret the arbitration provision as a viable and valuable means for the resolution of disputes that otherwise might erupt into social harm.

The judgment is reversed.

Traynor, C. J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would affirm the order denying the petition to compel arbitration for the reasons expressed by Mr. Justice Coughlin in the opinion prepared by him for the Court of Appeal, Fourth Appellate District, Division One, which is quoted in full below:

Appellant, a trades union, and respondent, a meat packing company, entered into a Collective Bargaining Agreement dated May 28, 1960, containing provisions respecting pension benefits for the employees represented by the Union; and also containing a provision for arbitration of any "disagreement arising within the terms of" the Agreement. Previously, viz, on December 3, 1926, the Company had executed a Trust Agreement providing a pension fund for its employees, and on January 1, 1927, had caused the adoption of Rules and Regulations for the administration of this fund by a Pension Board consisting of the trustees acting under the trust agreement. The pension plan applied to all employees of the company. The Collective Bargaining Agreement was made on behalf of members of the Union, and excluded "Drivers, Timekeepers, Watchmen, Engineers," and "Foremen, not to exceed sixteen (16)" employed by the Company. The provisions respecting pensions declared among other things: "The Company agrees that during the life of this Agreement pension benefits set up under the pension plan of the Company now in effect and as hereby amended will not be reduced, and

eligibility requirements stated in the pension plan, as hereby amended, will not be changed, except as indicated in Appendix I of this Agreement.''

Appendix I, so far as pertinent to the case at hand, declared: ''The following is a description of the changes to be made, . . . in the Rules and Regulations governing the Employees' Pension Fund of the Cudahy Packing Company, as last amended, effective January 1, 1957, . . . in-so-far as said Rules and Regulations apply to employees who are within the Bargaining Unit covered by the Agreement, of which this Appendix I forms a part. Except as provided herein, all provisions of said Rules and Regulations as amended January 1, 1957, shall remain in effect. The foregoing, however, shall not be construed as precluding the Company from amending said Rules and Regulations to extend the following changes to other groups of employees of the Company.

''. . . . . . . . . .

''7. VESTED PENSIONS

''An employee who is covered by the Agreement and whose employment is terminated with the Company under circumstances which entitle him to separation pay at the time when he has

''(A) attained age 55, and

''(B) completed 25 or more years of credited service

''will be entitled to a pension upon his attaining age 65. . . . '' Under Section 7 the employee is given the privilege of electing to accept a pension in lieu of separation pay, providing he exercises such election in writing within 18 months after termination of his employment.

Following execution of the Collective Bargaining Agreement the Rules and Regulations governing the Company's retirement program were amended, effective as of January 1, 1960, to comply with the provisions of Appendix I of that Agreement. The Rules and Regulations in effect at the time the Agreement was executed provided, among other things, that: ''The decision of the Pension Board upon any question of fact, interpretation, definition or administration under the plan shall be conclusive and, without limiting the generality of the foregoing, the Pension Board is specifically empowered to determine at its discretion what constitutes continuous service and substantially full time employment hereunder. . . .'' This provision was retained in the amended Rules and Regulations.

In 1961, as an incident to closing its San Diego plant, the Company terminated the employment of a member of the Union named Saunders, who had been in its employ in excess of 25 years, and who within six working days from termination of his employment would have attained age 55. Thereafter, by a letter directed to the Pension Board, dated October 24, 1961, the Union requested and demanded a pension be paid to Saunders in accord with Section 7 of Appendix I; set forth the facts heretofore noted; and stated that should the Pension Board not agree with the claim asserted on behalf of Mr. Saunders, it was the desire of the Union the matter be taken through the grievance procedure set out in the Collective Bargaining Agreement, "and if necessary, ultimately to arbitration." The grievance procedure referred to was that set forth in Section 19 of the Collective Bargaining Agreement which provides, in the event of "a disagreement arising within the terms of this Agreement, the question in dispute" shall be considered by the parties in a designated manner and if no agreement is reached, they "shall submit the matter to an Arbitrator" whose decision "shall be final and binding on the parties hereto." Section 19 also provides: "This procedure shall apply to all disputes, including those arising in relation to suspension or discharge of employees, provided, however, that with the exception of matters relating to suspension or discharge of employees, other prerogatives vested in Management by Section 13 shall not be affected by this clause." The Pension Board rejected Saunders' claim upon the ground he was not age 55 at the time of termination of his employment. Thereupon the Union directed a demand to the Company asserting the existence of a disagreement respecting their contention that Saunders was entitled to a pension under Section 7 of Appendix I, and for arbitration under Section 19 of the Collective Bargaining Agreement in the event the Company disagreed with its contention. The Company replied that the matter in question was not subject to arbitration under Section 19, and also that Saunders was not entitled to a pension under the Rules and Regulations governing the administration of the Pension Fund. In due course the Union petitioned the trial court for an order directing arbitration; its petition was denied; and it appealed.

The primary issue on appeal is whether the dispute described in the petition to compel arbitration is subject to arbitration under Section 19 of the Collective Bargaining Agreement.

The Company, as found by the court, was engaged in interstate commerce. As a consequence, federal rules control. (*Posner* v. *Grunwald-Marx, Inc.,* 56 Cal.2d 169, 175 [14 Cal. Rptr. 297, 363 P.2d 313].)

In *Atkinson* v. *Sinclair Refining Co.,* 370 U.S. 238, 241 [8 L.Ed.2d 462, 465, 82 S.Ct. 1318, 1320], the court said: "Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." (In accord: *John Wiley & Sons, Inc.* v. *Livingston,* 376 U.S. 543, 546-547 [11 L.Ed.2d 898, 902-903, 84 S.Ct. 909, 912-913]; *United Steelworkers of America* v. *Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 [4 L.Ed.2d 1409, 1417, 80 S.Ct. 1347, 1353].)

A resolution of the issue at hand does not involve any question about the applicable principles of law, which are settled, but is limited to an interpretation of the agreement in light of those principles. In determining the scope of an arbitration provision the court will consider the agreement containing such as a whole. (*McCarroll* v. *Los Angeles County etc. Carpenters,* 49 Cal.2d 45, 67 [315 P.2d 322]; *Smith* v. *Superior Court,* 202 Cal.App.2d 128, 133 [20 Cal.Rptr. 512].)

The Union's petition to compel arbitration under Section 19 is directed to a dispute which it claims involves an interpretation of Section 7 of Appendix I of the Collective Bargaining Agreement and Saunders' claim to pension rights conferred through that agreement. These pension rights are premised upon the continued existence of the Company's pension program and its administration under the Rules and Regulations approved by the Collective Bargaining Agreement. The Union's demand and the ensuing dispute concern a pension under this pension program payable from the existing pension fund. The provisions of Appendix I prescribe changes to be made in the Rules and Regulations governing "The Employees' Pension Fund of the Cudahy Packing Company," one of which was that set forth in Section 7; establish that the pension benefits to which the Collective Bargaining Agreement is directed are those provided by the Company's pension program; adopt the Rules and Regulations as part of the pension benefit provisions of the Agreement; and provide that, except as stated, "all provisions of said Rules and Regulations, . . . shall remain in effect." The Company has complied with Appendix I by effecting the changes therein

prescribed. Among the Rules and Regulations remaining in effect and adopted by the Agreement was that which provides for a determination by the Pension Board of all disputes respecting pension eligibility. In substance, the Board is made the arbiter of all disputes involving pension matters. Thus, the Collective Bargaining Agreement, when considered as a whole, contains an arbitration provision governing general disagreements arising within its terms and another analogous provision governing specific disagreements respecting pension eligibility. Under settled principles the latter controls the former. (Code Civ. Proc., § 1859; *Autry* v. *Republic Productions, Inc.*, 30 Cal.2d 144, 151 [180 P.2d 888].) We conclude the parties did not intend pension eligibility disputes should be settled by the arbitration method prescribed in Section 19 of the Agreement. Corroborating this conclusion is the fact a different method of arbitration also is expressly provided for disputes respecting the physical ability of an employee to continue in his employment after reaching age 68, which demonstrates it was not the intention of the parties that Section 19 should apply to all disputes.

Even assuming, for the sake of argument, that the Rules and Regulations governing the administration of the Company's pension fund and program were not incorporated as part of the Collective Bargaining Agreement, nevertheless, the pension benefits conferred through the Agreement are predicated upon the existence and maintenance of the Company's pension fund and program; the administration of that fund and program are governed by the Pension Fund Trust Agreement and the Rules and Regulations; any disagreement respecting eligibility for a pension under the program arises out of the Trust Agreement and the Rules and Regulations rather than "within the terms" of the Collective Bargaining Agreement; and, as a consequence, such a disagreement is not subject to arbitration under Section 19 of the latter.

The general arbitration provisions of the Collective Bargaining Agreement concerned only disputes between the Union and the Company as related to the employees for whom the Agreement was executed. The Company's pension fund and pension program were created and are maintained for the benefit of all of its employees. If the Union's contentions were accepted, one type of arbitration would apply to pension claims by Union member employees and a different type of arbitration for non-Union member employees. In light of this

fact, the interpretation of the Collective Bargaining Agreement excluding pension claims from the arbitration provisions in Section 19 thereof is more reasonable. It is fundamental that an interpretation of a contract which will make it reasonable, fair and just should be accepted over an equally consistent interpretation which would make it unreasonable, unfair and unjust. (*Cohn* v. *Cohn*, 20 Cal.2d 65, 70 [123 P.2d 833]; *Straus* v. *North Hollywood Hospital, Inc.*, 150 Cal.App.2d 306, 311 [309 P.2d 541].)

It is proper to note that our conclusion involves only a determination that the dispute asserted by the Union in this proceeding is not a dispute subject to the arbitration provisions in Section 19 of the Collective Bargaining Agreement. Not involved is a determination that the dispute under consideration is not subject to arbitration because, as judicially determined, no dispute exists in light of the clear meaning of the Agreement. Thus, the situation here is not similar to that considered in *Posner* v. *Grunwald-Marx, Inc., supra,* 56 Cal. 2d 169, cited by the Union in support of its position. The dispute under consideration in this proceeding does not concern a claim that Saunders is entitled to a pension from the Company other than through its pension program administered by the trustees of the Pension Fund acting as the Pension Board under the Rules and Regulations agreed upon by the parties. A dispute as to such a claim, even though without merit under the express provisions of the Agreement,[1] would be subject to arbitration under the rule stated and applied in *Posner* v. *Grunwald-Marx, Inc., supra,* 56 Cal.2d 169.

Also it should be noted, our conclusion does not involve a determination respecting the merits of Saunders' claim; the obligation of the trustees of the Pension Fund or the Pension Board; the question whether the discretion of the board in acting under the Rules and Regulations is limited by equitable considerations attendant upon the administration of a trust; nor the further question whether the exercise of its discretion is subject to judicial review.

A secondary issue is raised by the Union's contention the general arbitration provisions in question required arbitration of a disagreement respecting their scope. In *McCarroll* v. *Los Angeles County etc. Carpenters, supra,* 49 Cal.2d 45, 66, the

---

[1]The Agreement provides: "The company's liability with respect to pension benefits shall be limited to its obligation to make contributions to the fund as provided herein."

court said: ''Whatever the merits of the procedure, we think it sufficiently outside the usual understanding of the relations of court and arbiter and their respective functions to assume that the parties expected a court determination of the arbitrability unless they have clearly stated otherwise.'' The Collective Bargaining Agreement does not clearly express an intention of the parties that the scope of the arbitration provisions in Section 19 is a subject for determination by arbitration. To the contrary, by expressly providing several methods of determining disputes, one of which specifically encompasses the dispute under consideration, the parties obviously intended a judicial determination respecting the applicability of a particular arbitration method.