[Civ. No. 40099. Second Dist., Div. Four. Feb. 13, 1973.]

SAN LUIS OBISPO COUNTY EMPLOYEES' ASSOCIATION, INC., Plaintiff and Appellant, v.
JOHN V. FREEMAN et al., Defendants and Respondents.

512

**COUNSEL**

Duenow & Burke and James M. Duenow for Plaintiff and Appellant.

Robert N. Tait, District Attorney, and Jon M. Jenkins, Assistant District Attorney, for Defendants and Respondents.

## Opinion

JEFFERSON, J.—Petitioner, the San Luis Obispo Employees' Association, Inc., sought an alternative writ of prohibition or mandate against the respondent, the Board of Supervisors of San Luis Obispo County. The trial court discharged the writ, and, treating the petition as one for declaratory relief, made certain interpretations of resolutions passed by the respondent board with respect to wage/salary negotiations between the parties. Petitioner has appealed from the judgment. (Code Civ. Proc., § 1064.)

The background of the dispute is as follows: In January 1966, the respondent board enacted Resolution No. 25-66, which adopted an employee relations policy for the County of San Luis Obispo. It stated, in pertinent part, that "(a) All salaries shall be based upon a prevailing wage concept insofar as the same may be determined."

In January 1968, the board enacted Resolution No. 68-39, entitled "Employee Relations Policy" (hereinafter sometimes referred to as the Policy). The resolution sets forth, among other things, procedures for the qualification of employee bargaining representatives, and for the negotiation of salary levels between employee representatives and the county administrative officer. "Specific Objectives" are described in Article II. Among them are: "The establishment of the foregoing [employment conditions, including but not limited to salaries] on a basis that is fair to all concerned and comparable to similar employment elsewhere. This involves recognition of the principle that a public agency should provide employment conditions which are comparable with private employment, but which, at the same time, do not have the effect of inflating the labor market. (Section 2.)

"Recognition by all concerned that final authority, for the adoption of any program [wage/salary package negotiated] so submitted, rests with the Board of Supervisors of the County of San Luis Obispo."

The Policy defines "Negotiation" as "the process by which representatives of an employee organization . . . and management representatives of the County meet and confer in a good faith effort to overcome obstacles to agreement, and resolve differences . . . . The 'Negotiation' process does not obligate either party to accept a proposal or make a compromise."

The January 1968 resolution also sets forth five principles by which the administrative officer is to be guided in salary negotiations:

"(a) Equal pay for equal work;

"(b) The establishment of salaries and the benefits for the several classi-

fications of positions predicated upon the principle that said salaries and benefits would be *comparable* to similar classifications, within the area of recruitment, for the classifications; [italics added]

"(c) Recognition of recruitment problems in establishing salaries and benefits;

"(d) Recognition of turn-over as an influencing factor in establishing salaries and benefits;

"(e) Recognition of the necessity for maintenance of equitable internal relationships within the County Service."

Finally, the Policy expressly declares that "Resolution No. 25-66 [the previous enactment] and all previous resolutions adopted by the Board of Supervisors of the County of San Luis Obispo, which are in conflict with the provisions of this Resolution, be and hereby are, rescinded *to the extent that the same are in conflict therewith.*" (Italics added.)

On March 1, 1971, petitioner, the duly qualified bargaining representative for county employees, and the county administrative officer commenced salary negotiations.

On March 3, 1971, the petitioner left the bargaining table, claiming that further negotiation was useless, because the management representative was not following the guidelines set forth in the Policy.

Petitioner, by letter of March 4, 1971, requested that the respondent board instruct its representative to continue negotiations pursuant to the Policy guidelines; specific reference was made to the fact that the management representative was not producing any data to support the management position of "no movement" (i.e., no salary increase) on certain job classifications; that management was incorrectly interpreting guidelines (c) and (d) of the Policy to mean that if they were not experiencing difficulties in recruitment or turn-over in a particular job classification they would not consider a salary increase; and further, that management referred in negotiation to a factor completely outside the Policy, i.e., the ability of the county to fund salary increases for *its* employees.

The respondent board replied by letter on March 9, 1971, denying that its bargaining representative was misinterpreting the Policy. It urged the petitioner to return to negotiations so that a wage-salary package could be completed before the budgetary deadline. Petitioner did not return to the negotiations, and the proceeding in the trial court ensued.

Petitioner's writ sought to prohibit the respondent board from adopting

a county budget containing wage/salary provisions for its employees until it had concluded negotiations with the petitioner. Petitioner claimed that the respondent board was "wilfully and intentionally" interpreting the Policy guidelines in an "improper, unrealistic and arbitrary" manner. Petitioner also requested an order directing the respondent to resume negotiations pursuant to petitioner's interpretation of the Policy.

The trial court denied the writ, but did make the following interpretations of the Policy for the future guidance of the parties in negotiations. It found that the respondent board has a "mandatory duty" to meet and confer in good faith; that it is the policy of the county, as set forth in Resolution 68-39 to establish terms of employment which are "fair to all concerned and comparable with similar employment elsewhere"; that the Policy guidelines must be followed by the county representative in negotiation; that both sides have the duty to present data on particular job classifications, taking into account both private and public employment;[1] that the guideline set forth in section 8c which states "Recognition of recruitment problems in establishing salaries and benefits" shall only be considered if qualified applicants cannot be obtained at the present starting salary; that the guidelines set forth in section 8d which states "Recognition of turn-over as an influencing factor in establishing salaries and benefits" shall be used only if there is an excessive turn-over as an indication that the present salary may be too low; and that the county's ability to fund salary increases is not a proper issue to be discussed during negotiation between the county administrative officer and employee representatives.

The trial court made the basic conclusion that nothing contained in the statutory law or the resolutions of the board precluded the respondent board from making the final determination concerning proper conditions of employment, including salaries, for county employees, and that the board, in exercising its ultimate discretion, was not required to pay "prevailing wages" to its employees. The petitioner has appealed from the judgment. Its opening brief attacks specifically the trial court's conclusion in this regard.

It is well settled that the issuance or denial of an extraordinary writ is a matter for the sound exercise of judicial discretion by the trial court judge. (6 Witkin, Cal. Procedure (2d ed. 1971) § 243, p. 4235.) We have not found an abuse here.

Government Code section 25300 provides that: "The board of super-

---

[1]In the recruitment area, consisting of eight counties of Butte, Kern, Merced, Monterey, Santa Barbara, Santa Cruz, Sonoma and Ventura, and the State of California.

visors shall regulate the compensation of all county officers, other than the board of supervisors, the district attorney, and the auditor, and the number, method of appointment, terms of office or employment, and compensation of all deputies, assistants, and employees of the county."[2]

The term "prevailing wages" has been afforded a precise legal meaning, referring to those wages "paid in private industry for the same quality of service under similar employment." (*Walker* v. *County of Los Angeles,* 55 Cal.2d 626, 635 [12 Cal.Rptr. 671, 361 P.2d 247].) The cases considering "prevailing wage" provisions contained in city or county charters have held that such provisions require the employer to determine, by appropriate fact-finding, what "prevailing wages" are, and pay them to their employees. "Such 'prevailing wage' provisions have been held a positive limitation on the [particular] board's exercise of discretionary authority in fixing compensation. . . ." (*Walker,* cited *supra,* at p. 634; *Sanders* v. *City of Los Angeles,* 3 Cal.3d 252 [90 Cal.Rptr. 169, 475 P.2d 201].) They are clearly distinguishable from the situation here.[3]

The respondent board, in January 1968, passed the subsequent resolution specifically providing that it superseded previous enactments. Resolution No. 68-39 does not refer to "prevailing wages," but rather to "fair [wages] to all concerned and comparable to similar employment elsewhere." Since the term "prevailing wages" has a precise, ascertainable meaning, we cannot assume that the board intended to retain that concept, as petitioner suggests, and by its subsequent enactment of Resolution 68-39, implement the concept. Rather, it seems clear that the board was directing its administrative officer to negotiate upon an alternative standard, as it had the power to do under the statutory law.

In enacting Resolution No. 68-39, the Employee Relations Policy, the board was acting pursuant to the Meyers-Milias-Brown Act. (Ch. 10, div. (4) of Gov. Code, §§ 3500-3509; Stats. 1961, ch. 1964.) That act, which described procedures for the selection of bargaining representatives by public employees, has as its purpose the promotion of "full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations. . . . Nothing contained herein shall be deemed to supersede the provisions of existing state law and the charters, ordinances, and

---

[2]Subject to the power of the Legislature to prescribe qualifications for county employees by uniform legislation and to prescribe the method of appointment. (Gov. Code, § 25302.)

[3]We take judicial notice of the fact that San Luis Obispo County is a general noncharter county. (Evid. Code, § 452.)

rules of local public agencies which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations. . . ."

Nothing in the act requires the respondent board to pay "prevailing wages." The act has also been interpreted as "neither [requiring] collective bargaining nor precisely [defining] the rights which flow to public employees and the nature and scope of the contract that can be entered into by the parties." (*East Bay Mun. Employees Union* v. *County of Alameda,* 3 Cal. App.3d 578, 584 [83 Cal.Rptr. 503].)

Respondent board has, by appropriate enactment, adopted a standard with respect to wage/salary negotiations between the employee representatives and the county administrative staff. The trial court's declaration of the rights and obligations of the management representative at such "good faith" negotiations includes the obligation to follow the guidelines set by the board in its "Policy" utilizing the five stated principles contained therein as interpreted by the trial court.

The board's policy statement does not purport to limit either the board's statutory powers to fix salaries, or the opportunity of the employee association to communicate with the board itself. The judgment of the trial court correctly interpreted the policy statement.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 12, 1973. Clark, J., did not participate therein.