[Nos. F025765, F026444. Fifth Dist. Apr. 1, 1999.]

CITY OF FRESNO et al., Plaintiffs and Appellants, v.
THE PEOPLE ex rel. FRESNO FIREFIGHTERS, IAFF LOCAL 753 et
al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

84

## COUNSEL

Hilda Cantu Montoy, City Attorney; Sagaser, Hansen, Franson & Jamison, Howard A. Sagaser and Kimberly A. Gaab for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Rodney Lillyquist and Clayton Roach, Deputy Attorneys General, for Defendant and Appellant the People.

Carroll, Burdick & McDonough, Christopher D. Burdick, Rosemary Springer and Martin R. Gran for Defendants and Appellants Fresno Firefighters, IAFF Local 753 and Fresno Police Officers' Association.

## OPINION

VARTABEDIAN, J.—Karl von Clausewitz wrote that war is a continuation of politics "by other means." (Bartlett, Familiar Quotations (15th ed. 1990)

p. 443.) In an all too similar way, litigation can be a continuation of labor negotiations by other means: while it may reflect the failure of its less bloody alternative, there is no guarantee that the eventual result of war or litigation will be timely, or even that it will resolve what was at issue in the original diplomacy or negotiation.[1] So it seems in the present case. Not only does this case involve a matter put before the Fresno electorate six years ago but, in addition, we are informed that the relevant employees eventually negotiated for salaries that exceeded the minimums previously established by the city charter provision in question here.[2] Still, the war goes on.[3]

Before us once again, in No. F025765, is the issue of the efforts of the Fresno City Council and the City of Fresno (hereafter collectively City) to repeal portions of section 809 of the Fresno City Charter establishing a methodology for setting levels below which salaries for police officers and firefighters could not be negotiated. On this appeal by the People, Fresno Firefighters, IAFF Local 753, and Fresno Police Officers' Association, we conclude the City's actions were not subject to the mandatory meet-and-confer requirements of the Meyers-Milias-Brown Act (MMBA). (Gov. Code, § 3500 et seq.) Accordingly, the City was not required to bargain to impasse prior to taking the unilateral step of placing the issue of repeal before the electorate. We affirm the judgment.

In the consolidated appeal, No. F026444, the unions challenge the trial court's denial of an award of attorney fees under section 1021.5 of the Code of Civil Procedure. The unions contend they won a previous appeal in this same dispute; they say the trial court abused its discretion in finding they were in the litigation primarily for pecuniary reasons, not on behalf of the public interest. The City cross-appealed from certain findings made by the trial court. In this instance, too, we affirm the trial court's order.

---

[1] In a different context, the Supreme Court has said that "arbitration substitutes for economic warfare" between labor and management. (*Butchers' Union Local 229* v. *Cudahy Packing Co.* (1967) 66 Cal.2d 925, 938 [59 Cal.Rptr. 713, 428 P.2d 849].) In the present context of police and firefighter employees whose right to take job action is severely restricted, litigation has taken the place of "economic warfare" after the failure of negotiation. (See Lab. Code, § 1962 [firefighters]; *City of Santa Ana* v. *Santa Ana Police Benevolent Assn.* (1989) 207 Cal.App.3d 1568, 1571-1573 [255 Cal.Rptr. 688] [organized "sick out" enjoined].)

[2] The unions' opening brief in No. F026444, consolidated into this appeal, states: "The Unions actually [fared] better bargaining for wage increases without [charter section] 809. . . . Indeed, FPOA negotiated higher member salaries [for 1993 through 1996] than would have been generated by 809. Therefore, reinstatement of 809 would provide *no* direct financial benefit to the Unions, and the amount of any monetary gain that would result from such a reinstatement is pure speculation." (Cf. fn. 10, *post.*) The city contends the data do not establish the unions fared better without Fresno city Charter section 809.

[3] "As so often occurs in labor relations, the Unions pursued their appeal as a matter of principle."

## FACTS AND PROCEDURAL HISTORY

An earlier phase of this case was before us in *City of Fresno* v. *Fresno Firefighters IAFF Local 753*, No. F018749. We take judicial notice of the nonpublished opinion in that case, filed July 11, 1994, and modified on denial of petition for rehearing on August 10, 1994. The earlier opinion summarizes the factual and procedural history of the case. We quote at length from that opinion, with certain clarifications noted in brackets.

### "Background

"Since the mid-1950s, [Fresno City Charter] section 809 has prescribed an eight-city formula under which the city council is required to set the [minimum] salaries for police officers and firefighters based upon the average salaries paid to their counterparts in eight designated cities in California.[4] The formula [often] has been incorporated into the MOU's[5] entered into between City and the unions pursuant to the MMBA [thereby setting the actual wages at the average wage base established by the eight-city formula, although some MOU's have provided for percentage increases or the eight-city average, whichever is higher].

"The MOU's contain provisions referred to by the parties as 'zipper' clauses which provide:

" 'During the life of this [MOU], shall either party desire to modify its terms or to meet and confer as to matters within the scope of representation not addressed in the [MOU], such party shall request in writing to meet and confer . . . . During the life of this Memorandum, either party may refuse such request without explanation if the item is directly related to or is an item directly considered herein, or if the item was included in a written proposal of either party during the meet and confer process which led to this agreement, and no unilateral action may be taken thereon after such refusal.'

"In 1988, the Fresno City Council moved to place on the ballot amendments to section 809 which would have repealed the eight-city formula. The

---

[4]At this point the opinion contained the following footnote: "Section 809 provide[d]: 'Compensation of officers and employees of the city . . . shall be fixed by the Council as it may from time to time determine . . . provided that the monthly salaries of the members of the police and fire departments of the city shall be fixed annually at an amount not less than the average monthly salaries, including increased cost of living bonuses, or whatsoever other name known, paid or approved for payment to members of like or comparable grade or rank of the police and fire departments of the cities of Pasadena, Glendale, San Jose, Stockton, Sacramento, Berkeley, Richmond and Alameda as of July 1 of the new budget year . . . .' (Emphasis added.)"

[5]Memorandums of understanding, i.e., the labor contracts (hereafter MOU's).

[firefighters' and police officers' unions, the present appellants] sought a writ of mandate and [a] preliminary injunction directing City to honor the terms of the MOU's by not taking the unilateral action of placing a measure to modify section 809 on the ballot. In an oral ruling from the bench, the Fresno County Superior Court denied the motion for preliminary injunction, holding that City's action did not violate the intent of the MOU's. After a lengthy and expensive election campaign, the voters rejected the proposed repeal, but a number of influential entities remained opposed to the eight-city formula.

## "Facts

"In 1990, City and the unions entered into new MOU's for July 1, 1989, through June 30, 1992 (firefighters), and July 1, 1990, through June 30, 1993 (police officers). According to the unions, during the negotiations, Douglas Furman, City's Labor Relations Manager, stated the city council did not intend to propose a repeal of section 809 during the term of the MOU's because the council did not want to repeat the divisive election fight of 1988. However, the unions were concerned that a citizens' group might attempt to put the repeal on the ballot. As a result, the 1990 MOU's contained language providing for an alternative salary setting method '[i]n the event Fresno Charter Section 809 is eliminated by a vote of the electorate . . . .'

"In February 1992, the city council directed [City Manager] Michael Bierman . . . to meet and confer with the unions on a possible repeal, amendment or modification of section 809 so the issue could be submitted to the voters at the November 1992 general election. Bierman wrote the unions requesting they meet and confer on alternatives to section 809. The unions agreed to the request.

"The parties met during April 1992 to discuss ground rules but could not agree on an impasse procedure. City contended it retained the right to take unilateral action, including placing the repeal or modification of section 809 on the ballot, in the event the parties were unable to reach an agreement. The unions countered [that] the zipper clauses precluded such unilateral action during the[] terms [of the MOU's]. While they were willing to waive their right under the zipper clause not to meet and confer on section 809, they were unwilling to waive their [asserted] right to prevent City from taking unilateral action if the talks proved unproductive.

## "Procedural History

"In May 1992, City abandoned attempts to negotiate and filed a complaint seeking (1) an injunction directing the firefighters and police officers to meet

and confer in good faith, and (2) a declaration that nothing in the existing MOU's precluded it from proposing and having the electorate approve . . . amendment, modification or repeal of section 809 subject only to City's obligation to provide the unions the opportunity to meet and confer. Concurrently, City sought a preliminary injunction directing the unions to meet and confer in good faith with City regarding an amendment or modification of section 809. The unions opposed the motion for preliminary injunction on a number of grounds. In August 1992, the trial court . . . denied the motion for preliminary injunction, concluding the zipper clauses unambiguously precluded City from proposing or passing a resolution regarding section 809.

"City then sought summary judgment/adjudication of its second cause of action for declaratory relief. City argued that nothing in the existing MOU's precluded it from taking action to amend, modify or repeal section 809; alternatively, if the zipper clauses prevented City from so acting, they were unconstitutional and void. The unions filed a cross motion for judgment on the pleadings. They contended City failed to exhaust its administrative remedies and the zipper clauses unambiguously prevented City from proposing charter amendments to the voters on issues addressed in the MOU's.

"After a hearing, the court . . . denied the unions' motion for judgment on the pleadings and granted City's motion for summary adjudication. In granting the motion, the court stated triable issues of fact existed as to the meaning of the zipper clauses. But, if the unions prevailed on their interpretation that the zipper clauses precluded City from proposing a charter amendment, such an interpretation would be unconstitutional. 'The MOUs, as interpreted by [the unions], are in violation of Article XI, section 3, subdivision (b) of the California Constitution in that they permit [the unions] to decide if and when [City] may propose a ballot measure to the voters concerning the repeal or amendment of charter section 809 during the life of the MOUs. This is an impermissible restriction on the constitutional prerogatives of the City under the California Constitution.'

"After City dismissed its first cause of action, the court entered judgment for City on its claim for declaratory relief on October 29, 1992. [The trial court denied the parties' cross-motions for resolution of the declaratory relief cause of action on nonconstitutional grounds. The motions focused on the question whether proposal of modification/repeal of the eight-city formula violated the terms of the zipper clause.] The unions [and the City] appealed from the judgment.

"Post-Judgment Proceedings[]

"On October 27, 1992, the city council adopted a resolution submitting a charter amendment to repeal the eight-city salary formula to the voters at the primary election on March 2, 1993.

"On November 24, 1992, the unions filed a complaint for injunctive relief and a petition for writ of mandate requiring City to meet and confer on section 809 and prohibiting City from holding the election. The court refused to restrain the holding of the election, and 62.4 percent of the voters approved the repeal.

"The Attorney General granted the unions leave to sue in quo warranto [see 76 Ops.Cal.Atty.Gen. 169 (1993)] and, on August 18, 1993, the People of the [S]tate of California, together with the unions, filed a complaint challenging the validity of the election on the ground City failed to meet and confer with the unions prior to submitting the proposed repeal to the voters. The superior court consolidated the unions' two actions and they are pending in the superior court." (*City of Fresno* v. *Fresno Firefighters IAFF Local 753, supra,* No. F018749.)

### *The Previous Appeal*

The unions and the City both appealed from the October 29, 1992, judgment. As relevant here, the unions contended the zipper clauses, as they interpreted them, were not unconstitutional and that they were entitled to judgment on the pleadings on the City's declaratory judgment cause of action. The City contended that even if the zipper clauses were constitutional and were interpreted as the unions did, the issue of modification/repeal of the eight-city formula was not included in the zipper clause. Accordingly, the City contended, it was entitled to summary adjudication on the declaratory relief count even if the trial court was wrong on the constitutional issue.

In this court's opinion, as modified, the court held that the zipper clauses, interpreted to preclude the City from proposing to the electorate the modification of a provision of an MOU during the effective term of the MOU, did not violate the home rule provisions for charter cities under article XI, section 3 of the California Constitution. In addition, this court concluded that triable issues of fact existed precluding summary adjudication on the City's declaratory relief cause of action. In essence, this court concluded that the City had not established, in the record then before the court, that the City intended to negotiate only for post-MOU modification or repeal of the eight-city formula. In addition, this court found a triable issue of fact

concerning whether postcontractual modification/repeal of the eight-city formula had been "included in a written proposal of either party during the meet and confer process which led to" the existing MOU's, thereby bringing it within the zipper clauses in the first place. The court remanded the case for trial.[6]

### Proceedings on Remand

A trial on the consolidated cases was held in February of 1995 before Judge Quaschnick. After extensive posttrial briefing and proceedings, the court issued its "Ruling, Final Statement of Decision, Findings Regarding Issues of Fact and Issues of Law" on November 14, 1995. In its 33-page decision, the court found the following:

1. The zipper clause did not pertain to the modification/repeal of the eight-city formula. (Although unstated, it appears from the context that the court was referring to a modification/repeal with post-MOU effect only.) Accordingly, the City was entitled to declaratory judgment that "nothing in the existing MOUs precluded [the City] from proposing and having the electorate approve an amendment, modification or repeal of section 809 subject only to City's obligation to provide the Unions the opportunity to meet and confer."

2. The unions engaged in bad faith bargaining, particularly in their insistence that the City agree, in advance of any substantive negotiations, that it would not take unilateral action to propose modification/repeal of the eight-city formula if the negotiations failed to result in an agreement. As a result of the unions' bad faith bargaining, the unions waived their right to meet and confer, and the City was entitled to place the issue of repeal of the eight-city formula on the ballot.

3. Repeal of the eight-city formula in March of 1993 did not affect any terms or conditions of existing MOU's because (a) all salary terms for the years expressly covered by the MOU's had already been set using the formula, and (b) "the parties had already agreed in advance what the wages would be in the event that Charter Section 809 was repealed."

---

[6]Thus, as stated by the unions in their opening brief, the earlier appellate opinion "did not—and was not asked to—reach the issues raised in the [quo warranto action]. These issues of whether the City met its MMBA obligations to bargain to impasse, make a last, best and final offer, and apply impasse resolution procedures before proposing repeal are separate from the question of whether the zipper clauses precluded such a proposal. Simply stated, even if the MOU's did not bar the City from proposing repeal, [the quo warranto action poses the question whether] the Council still had to satisfy its meet and confer obligations . . . before doing so."

4. In any event, repeal of the eight-city formula was a permissive, not mandatory, subject of bargaining under MMBA; accordingly, the City was not required to bargain to impasse before taking unilateral action concerning that issue.

5. The City met and conferred with the unions in good faith before placing on the ballot the question of repeal of the eight-city formula. However, the "proposed repeal of Charter Section 809 fell outside the scope of representation (as that phrase is used in [MMBA]), as the proposed changes to Charter Section 809 had only post-contract effect." As a result, impliedly, the City had no duty to meet and confer at all concerning repeal.

On February 2, 1996, the court entered judgment in favor of the City in the consolidated actions.

*MMBA and the Issues on Appeal*

MMBA recognizes the existence and legitimacy of public employee labor unions, which it refers to as "employee organizations." (Gov. Code, §§ 3501-3503.)[7] Section 3504 says that the "scope of representation [by such unions] shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order."

Section 3505 requires, inter alia, cities to "meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of . . . recognized employee organizations, . . . and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action. [¶] . . . The process should include adequate time for the resolution of impasses where specific procedures for such resolution are contained in local rule, regulation, or ordinance, or when such procedures are utilized by mutual consent."

In combination, sections 3504 and 3505 essentially map out the same territory for bargaining (conditions of employment) and exemption from bargaining (management prerogatives) that has been mapped out in federal case law under the National Labor Relations Act (the NLRA) (29 U.S.C.

---

[7]All further section references are to the Government Code unless otherwise indicated.

§ 151 et seq.). (See *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 614-616 [116 Cal.Rptr. 507, 526 P.2d 971].) Thus, under MMBA the governmental employer has a duty to meet and confer concerning all matters within the scope of representation of its employees by the union. (See *San Francisco Fire Fighters Local 798* v. *Board of Supervisors* (1992) 3 Cal.App.4th 1482, 1490 [5 Cal.Rptr.2d 176]; *Wright* v. *City of Santa Clara* (1989) 213 Cal.App.3d 1503, 1506 [262 Cal.Rptr. 395].)

In No. F025765, the unions contend that repeal of the eight-city formula is within the scope of representation under MMBA and constitutes a mandatory issue upon which the City must meet and confer.[8] As a result, the City was required to bargain to impasse and to use existing impasse resolution procedures, as required by MMBA, before acting unilaterally to place the issue of repeal before the voters. In addition, the unions contend they did not bargain in bad faith or refuse to bargain. Accordingly, they contend, the trial court erred in finding they waived the right to meet and confer to impasse on the repeal issue.

The City contends the repeal issue was a permissive subject of bargaining due to the nature of the charter provision or, in the alternative, that there was no duty to bargain at all because repeal would have had only postcontract effect. Further, the City contends, it fulfilled its duty to meet and confer as that duty is prescribed by MMBA and case law. Finally, the City contends the unions did not meet and confer in good faith, thereby "relieving the City of any obligation it may have had to meet and confer on the repeal of section 809."

In No. F026444, the sole issue is whether the trial court abused its discretion in denying the unions' motion for an award of attorney fees, requested pursuant to Code of Civil Procedure section 1021.5, in connection with the earlier appeal of the declaratory judgment action. The parties dispute whether the unions were the prevailing parties and whether they were primarily motivated in the litigation by their own pecuniary interests.

---

[8]The state is not merely a nominal party in a quo warranto action; it actually has ultimate control over the course of the litigation. (*People* v. *City of Huntington Beach* (1954) 128 Cal.App.2d 452, 455 [275 P.2d 601].) In this consolidated case, the appeal was taken by the state and the unions. The Attorney General and the unions' attorneys appear on the briefs. While it appears that the Attorney General has acquiesced in the arguments made by the unions as relators, it is also clear that the unions' attorneys have taken the laboring oar throughout the litigation. In the interest of reality, then, we will refer to the appellants in No. F025765 as "the unions," even though, as a matter of law, the sole appellant in the quo warranto action is the state. (*People* ex rel. *Conway* v. *San Quentin Prison Officials* (1963) 217 Cal.App.2d 182, 183 [31 Cal.Rptr. 649].)

## DISCUSSION

### I. *The MMBA Issues (No. F025765)*

#### A. *Mandatory v. Permissive Subject of Bargaining*

The trial court concluded that repeal of Fresno City Charter section 809 was a permissive, not mandatory, subject of bargaining. As such, the court concluded the City had no duty to bargain to impasse or use the impasse resolution provisions of the municipal code.[9] We examine these conclusions.

In determining whether the City had a duty to meet and confer concerning repeal of the eight-city formula—that is, whether the city charter provision was a mandatory subject of bargaining within the statutory "scope of representation"—it will be useful to reiterate the relevant portion of Fresno City Charter section 809 (see fn. 4, *ante*): "salaries of the members of the police and fire departments of the City shall be fixed annually at an amount *not less than* the average monthly salaries . . . ." (Italics added.) The MOU's themselves provided (using the example of the 1990-1993 police MOU): "Salaries . . . shall be established pursuant to the first paragraph of Charter Section 809 . . . ." It is clear that, while salaries were in fact calculated based on the eight-city formula, the use of that calculation in any particular MOU was established through collective bargaining, not by the terms of charter section 809 itself.

The parties have not cited to us, nor have we discovered, any case which holds that enactment, modification or repeal of a minimum salary law is or is not a matter within the scope of representation. The unions place great reliance on *People* ex rel. *Seal Beach Police Officers Assn.* v. *City of Seal Beach* (1984) 36 Cal.3d 591 [205 Cal.Rptr. 794, 685 P.2d 1145] (hereafter *Seal Beach*). That case, however, is not helpful in resolving the question before us.

At issue in *Seal Beach* was the action of a city in proposing to the electorate a charter amendment requiring the termination of city employees if they participated in any strike; the proposed amendment also prohibited the city from rehiring any such workers. (36 Cal.3d at p. 595.) The city

---

[9]These procedures involve, in summary, mediation if both parties agree and a mandatory factfinding process followed by a report to the parties. If the parties do not reach agreement within five days after delivery of the report, the report becomes public and, inferentially, the city council then may act unilaterally on the disputed subject matter. (Fresno Mun. Code, § 2-1916.)

placed the measure on the ballot without first meeting and conferring with the relevant public employee unions. The measure was adopted by the electorate and several unions sued in quo warranto to invalidate the election. The Supreme Court concluded that negotiation over this charter section, which would directly set a "condition of employment," was required, notwithstanding the city council's express right under the California Constitution to propose charter amendments. (*Id.* at pp. 597-598, 601.)

The question in the present case is not whether the California Constitution exempts the City from bargaining about a change in a matter admittedly within the scope of representation, as in *Seal Beach*. The question here is whether Fresno City Charter section 809 is a matter within the scope of representation at all. (See *Building Material & Construction Teamsters' Union* v. *Farrell* (1986) 41 Cal.3d 651, 657-658 [224 Cal.Rptr. 688, 715 P.2d 648].) This latter question was not addressed in *Seal Beach*; consequently, *Seal Beach* is of limited assistance.

The question whether Fresno City Charter section 809 is a matter within the scope of representation is, in our opinion, a close and difficult one. On the one hand, the eight-city formula only establishes "a *policy* of parity" between local firefighter and police wages and those in other large California cities. (*Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 383 [71 Cal.Rptr. 687, 445 P.2d 303], italics added.) As such, it merely sets the City's initial bargaining position, as the unions recognize.[10] Establishment of an initial bargaining position clearly would seem to be in the nature of a "general managerial policy decision" exempt from the meet-and-confer requirements of section 3505 pursuant to section 3504, in the same way, for example, the composition of the City's negotiating committee would be exempt from mandatory bargaining. (Gorman, Basic Text on Labor Law (1976) Subjects of Collective Bargaining, p. 527; see *Seal Beach, supra,* 36 Cal.3d at p. 602, quoting from *Fire Fighters Union* v. *City of Vallejo, supra,* 12 Cal.3d at pp. 615-616.)[11] Charter section 809, in fact, only establishes wages directly when the collective bargaining process has broken down and impasse on the issue of wages has resulted. *Then,* and outside of the collective bargaining

---

[10]In their reply brief, the unions state: "809's formula set a floor from which bargaining over wages could begin, and gave the Unions some leverage, assuring a minimum wage level, yet freeing them to negotiate for more. Without 809, the Unions['] bargaining position is far worse and the City has unlimited room to dictate the end result."

[11]In *San Luis Obispo County Employees' Assn.* v. *Freeman* (1973) 30 Cal.App.3d 511, 517 [106 Cal.Rptr. 357], the court held enforceable a county's ordinance setting forth general policies concerning how the county should approach setting wages through the meet-and-confer process. The issue there, however, was whether the policies, once in place, were enforceable. There was no issue concerning any duty to meet and confer concerning establishment, modification or repeal of the policies.

process, charter section 809 becomes a wage-setting provision; before that time, it merely establishes a mandatory *bargaining position* for the City.

It is in this sense that the trial court correctly observed, in support of its finding that repeal of Fresno City Charter section 809 was merely a permissive subject of bargaining: "The repeal of Charter section 809 did not place any impediments to future meet and confer under [MMBA] and the only effect the repeal . . . had was to require the parties in the future to meet and confer in good faith . . . ."

Different considerations would be involved if the charter section in question actually set wages, as is the case in some prevailing wage charter provisions. (See, e.g., *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 906 [120 Cal.Rptr. 707, 534 P.2d 403] [charter provision required that public employee wages " 'shall be in accord with the generally prevailing rates of wages for like service and working conditions in private employment or in other comparable governmental organizations in this state' "].) In those cases, the charter provision establishes the wages, and repeal of the charter section would be subject to negotiation (*Seal Beach*, *supra*, 36 Cal.3d at pp. 600-601); in the present case, Fresno City Charter section 809 does not purport to set wages. As such, the literal terms of charter section 809 would not bring it within the statutory "scope of representation."

On the other hand, one California case has recognized the *practical* effect of a minimum salary provision may be to set wages at that minimum level. In *San Francisco Labor Council* v. *Regents of University of California* (1980) 26 Cal.3d 785, 790 [163 Cal.Rptr. 460, 608 P.2d 277], Justice Clark wrote for a unanimous court, albeit as dicta: "A statute requiring payment of prevailing wages or more is effectively a salary setting statute. Public agencies' use of taxpayers' funds to pay in excess of a prevailing wage is unwarranted, and while the statute purports to establish a minimum wage, it in effect determines the wage." In the present case, the eight-city minimum became the actual wage incorporated into the MOU's in some instances.[12]

Nevertheless, on balance we believe we must give effect to the words of Fresno City Charter section 809 as a statement of the City's fundamental labor policy, and not merely to the practical effect it has had in firefighter and police wage negotiations. (*Building Material & Construction Teamsters'*

---

[12]At oral argument, counsel for both sides agreed that the eight-city minimum did not always become the actual wage. The City's counsel stated, "I am not willing to say the record shows the 809 wage automatically became the wage in the MOU." Counsel for the unions remarked, "At least 85 percent of them have been 809 and that's it."

*Union* v. *Farrell, supra,* 41 Cal.3d at p. 660.)[13] We conclude the unions had no stake under MMBA in determining whether the citizens of Fresno directed an opening *bargaining position* to be assumed by the City's labor negotiators. Therefore, we conclude the minimum salary formula of Fresno City Charter section 809 was not a mandatory subject of bargaining; that is, it was not a matter within the scope of representation.

## B. *Fresno City Charter Section 809 as "Interest Arbitration"*

The trial court also found that Fresno City Charter section 809, when viewed in light of the unions' interpretation of the zipper clauses, constituted "a form of interest arbitration and therefore is a permissive subject of bargaining." In the view of the trial court, the contention of the unions was that the zipper clauses made the eight-city formula the mandatory basis for firefighter and police salary scales until the unions agreed otherwise, since the eight-city formula had been incorporated into the existing MOU's. Thus, unless the unions agreed otherwise, the zipper clauses would resolve the issue of wages upon impasse nonconsensually by operation of the eight-city formula, in much the same way the parties would be bound by an arbitrator's determination of a wage dispute under a contractual "interest arbitration" clause.

The unions disagree that their position is "a form of interest arbitration" in any relevant sense. First, they assert that Fresno City Charter section 809 does not provide for any kind of, "interest" or otherwise. Second, they contend the zipper clauses, properly interpreted, do permit unilateral action by the City once then current MOU's have expired and the City has followed the meet-and-confer process to the end. Before we address these contentions, we will establish the context of the discussion.

Interest arbitration involves an agreement between an employer and a union to submit disagreements about the proposed content of a new labor contract to an arbitrator or arbitration panel. (See, e.g., *Fire Fighters Union* v. *City of Vallejo, supra,* 12 Cal.3d at pp. 612-614; see also *N.L.R.B.* v. *Columbus Printing Pressmen, etc.* (5th Cir. 1976) 543 F.2d 1161, 1163, fn. 4.) The present scheme obviously is not interest arbitration per se but, as the trial court implied, it may be viewed as analogous in important ways, particularly if the zipper clauses were to be interpreted as the trial court thought the unions meant to interpret them.

The analogous problem in NLRA interest arbitration cases arises in the following circumstances: Interest arbitration clauses are a permissive,

---

[13]While he disagrees with our interpretation of those words, counsel for the unions agreed at oral argument that the words of the charter control over its practical effect in this regard.

not mandatory, subject of bargaining. They are, however, generally enforceable if the parties have voluntarily included such a provision in the contract. (*Sheet Metal Workers'* v. *Aldrich Air Conditioning, Inc.* (8th Cir. 1983) 717 F.2d 456, 458.) At the end of a contract term, when the parties begin negotiating a new contract, an employer may announce it no longer wants interest arbitration. May the union invoke the interest arbitration provisions of the current contract to force the employer into arbitration on the continuation of interest arbitration itself in the new contract?

Federal courts deciding the matter under the NLRA have concluded "that an interest arbitration clause is unenforceable insofar as it applies to the inclusion of a similar clause in a new collective bargaining agreement." (*Sheet Metal Workers'* v. *Aldrich Air Conditioning, Inc., supra,* 717 F.2d at p. 459; see also *Beach Air Conditioning* v. *Sheet Metal Workers* (9th Cir. 1995) 55 F.3d 474, 478; *American Metal Products* v. *Sheet Metal Workers* (9th Cir. 1986) 794 F.2d 1452, 1457.) In other words, the courts will not permit interest arbitration clauses to be self-perpetuating.

A zipper clause that required union approval before the City could repeal or even insist on negotiations on the repeal of the eight-city formula would render the eight-city formula self-perpetuating. In that sense, public policy and delegation of legislative power concerns likely would void the zipper clauses in the same manner the federal courts have voided self-perpetuating interest arbitration provisions. (See *Kugler* v. *Yocum, supra,* 69 Cal.2d at pp. 376-377; *City of El Cajon* v. *El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64, 72-73 [56 Cal.Rptr.2d 723].) In that sense, the trial court correctly concluded the wage formula, as implemented by the zipper clauses, was "a form of interest arbitration."

The course of this litigation, however, has refined the parties' positions somewhat. It appears the unions do not now, if they ever did, assert that the City is prohibited from proposing repeal of the eight-city formula unless the unions permit it to do so. Initially, both parties agree that the zipper clauses have the effect of preventing the City from forcing the unions to meet and confer on modification of the wage-setting formula to take effect during the term of an existing MOU. Further, the parties agree that after the MOU's have "technically expired" the City may force negotiations on a change in the wage-setting formula and eventually (i.e., after unresolved impasse) act unilaterally to change the wage formula. The question, as the unions see it now, is only whether the City may insist, during the term of the existing MOU's, that the unions meet and confer on a change in the wage-setting formula if that change will take effect only after the current MOU's expire.

The unions' clarification that the City is permitted to insist on negotiations on the eight-city formula after the expiration dates of the current MOU's undermines the basis for the trial court's analogy between the zipper clauses and interest arbitration. If the zipper clauses permit the City to insist on negotiation, bargain to impasse and then take unilateral action within a reasonable time, they do not violate the public interest in the same manner an indefinitely self-perpetuating zipper clause would. (See *N.L.R.B.* v. *Columbus Printing Pressmen, etc., supra*, 543 F.2d at p. 1168.) Based on the unions' proposed interpretation of the zipper clauses, we conclude the zipper clauses and the eight-city formula are not "a form of interest arbitration."

## C. *The Unions' Interpretation of the Zipper Clauses*

Even though we agree with the unions that the zipper clauses are not void, the question remains whether the clauses operate in the manner asserted by the unions. The unions contend the clauses must be interpreted to permit the unions to refuse a demand to meet and confer on any subject within the ambit of the clauses until after the date the unions call "the technical expiration of the MOU," that is, until after the date on which the contract states it will terminate. This court expressly decided in its prior opinion that such an interpretation of the contract would be unreasonable: "Under the unions' interpretation, because the contract refers to section 809 and section 809 concerns wages generally, that general subject matter cannot be brought to the negotiating table during the life of the contract even though the party requesting to meet and confer does not intend by the request to modify or add a term to the current contract. That interpretation is unreasonable." (Fn. omitted.)

The unions have not suggested any reason why this determination in the earlier opinion is not the law of the case. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 896, 903, pp. 930-931, 938 [collecting cases].) Nor do they argue that our previous determination was wrong. They simply ignore the prior determination and assert: "To the extent that it takes time to place an amendment on the ballot, the City can certainly invite negotiations on the proposed amendment immediately upon the MOU's technical expiration."

As stated in the modification of the prior opinion, "the general purpose of a zipper clause is to 'zip up' the collective bargaining agreement. It insulates both parties to the agreement from a demand by the other party to reopen negotiations with the intent of modifying or adding to the current contract terms or otherwise changing the status quo." It does not insulate the unions (or the City) from timely requests to begin bargaining about the next MOU.

As before, we conclude the unions' interpretation of the zipper clauses to the contrary is unreasonable.

### D. *Unilateral Changes: The City's Intent and the Postcontract Status Quo*

A determination that the clauses permit a pretermination demand for negotiations about posttermination changes does not, however, end the inquiry. In the previous opinion, this court decided the City had not established "that its intent in requesting to meet and confer in Spring 1992 excluded [the request] from the provisions of the zipper clause." Thus, there was a twofold determination for the trial court on remand. First, was the City requesting to renegotiate the wage provisions of the existing MOU's when it offered to meet and confer on the eight-city formula in 1992, or was it proposing negotiations for changes effective after the expiration of the existing MOU's? Second, did obligations of the City under MMBA—obligations that survived the "technical expiration" of the MOU's—preclude the City from unilaterally proposing to the electorate a change in Fresno City Charter section 809 prior to exhaustion of impasse resolution procedures?

At trial, City Manager Bierman testified: "Whatever we were putting on [the table concerning Fresno City Charter section 809] was not going to be retroactive, it was prospective and so it didn't [a]ffect current contracts." The unions have pointed to no evidence indicating a contrary position by the City, and we have found none. Bierman's testimony provides substantial evidence to support a finding that there was no request by the City to meet and confer on a change to the wage provisions of the then current MOU's.

As to the second question, the unions contend the continuing duty of the employer to maintain the status quo after expiration of an MOU prohibited the City from unilaterally proposing repeal of Fresno City Charter section 809. (See generally, Zerger et al., Cal. Public Sector Labor Relations (1998) Duty to Bargain, § 10.06[1], pp. 10-28 to 10-31; Gorman, Basic Text on Labor Law, *supra*, Duty to Bargain in Good Faith, pp. 439-443.)

 "The duty to bargain requires the public agency to refrain from making unilateral changes in employees' wages and working conditions until the employer and employee association have bargained to impasse; this duty continues in effect after the expiration of any employer-employee agreement." (*Santa Clara County Counsel Attys. Assn.* v. *Woodside* (1994) 7 Cal.4th 525, 537 [28 Cal.Rptr.2d 617, 869 P.2d 1142].) Thus, in *San Joaquin County Employees Assn.* v. *City of Stockton* (1984) 161 Cal.App.3d 813 [207 Cal.Rptr. 876], the city had agreed in the MOU to "provide" certain insurance benefits. After expiration of the MOU, and while negotiations on a new

contract were proceeding, the cost of such insurance increased by $19 per month per employee. The city unilaterally deducted $19 from each employee's monthly wages to cover the difference, claiming that payment of premiums at the previous level was the "status quo" it was required to maintain under MMBA. (*Id.* at p. 818.) The appellate court disagreed. It noted that the MOU called for the city to provide insurance, not to pay a certain premium. Accordingly, maintenance of the status quo required the city to pay the increased premiums to meet its obligations under the expired MOU. (*Id.* at p. 820.)

In the present case, the MOU's provided that the wages of firefighter and police employees would be set "pursuant to City Charter Section 809." The duty of good faith bargaining under MMBA required the City to continue to pay wages in accordance with the eight-city formula contained in Fresno City Charter section 809 unless and until the parties agreed otherwise or had exhausted the impasse procedures. That is true, however, regardless of whether section 809 was still in the Fresno City Charter or had been repealed. The duty to bargain in good faith established in MMBA is a matter of statewide concern and of overriding legislative policy, and nothing that is or is not in a city's charter can supersede that duty. (*Seal Beach, supra,* 36 Cal.3d at p. 600.)

In fact, it appears from the record the City fully appreciated its duty to continue the terms and conditions of employment established by expired contracts until the meet-and-confer process on a new contract was completed. It also appears the firefighters' union had previously been successful against the City in litigation arising from the City's failure to maintain the existing pay structure after expiration of an earlier MOU. And the City apparently continued to abide by the salary terms of the MOU's that expired after repeal of Fresno City Charter section 809, during the period until new MOU's were signed. The unions do not contend the City took unilateral action concerning actual firefighter and police wages.

The unions do contend, however, that the City undertook prohibited unilateral action in changing the city charter from which the wage formula originally was taken. We disagree. We return to the point we made at the beginning of the discussion in this opinion: even if the unions are entitled to have the City pay wages at a certain level or under a certain formula under an existing MOU, they are not entitled to have the City's initial negotiating position on new MOU's frozen into the city charter. That is why the City's witnesses, particularly Douglas Furman, its chief labor negotiator, were entirely correct in asserting that there was a difference between repeal and

alteration of Fresno City Charter section 809. If a proposal for a *substitute* charter section, such as the binding arbitration suggestion the parties discussed for months, would result in a mechanism for *setting* wages, it was subject to mandatory bargaining to impasse. (See *Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach* (1976) 58 Cal.App.3d 492, 503 [129 Cal.Rptr. 893].) However, repeal of the eight-city formula as a minimum threshold for wages did not set wages at any particular level; more importantly, repeal still permitted the parties to agree through the meet-and-confer process that the exact same eight-city formula *would set* the wages under the MOU's. (See *San Luis Obispo County Employees' Assn.* v. *Freeman, supra,* 30 Cal.App.3d at p. 517.) As a result, we conclude placing on the ballot a proposal to repeal charter section 809 did not in any manner change the "status quo" between the City and its firefighter and police employees, as that term is used under MMBA.

E. *Summary of Holdings in No. F025765*

We have reached three conclusions that, taken together, require that we affirm the judgment in this case. Those are: (1) Repeal of Fresno City Charter section 809 was a permissive, not mandatory, subject of bargaining; bargaining to impasse was not required. (2) Repeal of charter section 809, with postcontract effects only, was not within the scope of the zipper clauses. (3) The City's action in placing a repeal proposal on the ballot did not change the status quo established by the expiring MOU's so long as wages continued to be set consistent with the eight-city formula during negotiations on new MOU's.

As a result of these conclusions, we are not required to review other findings of the trial court, and we express no opinion on those. In particular, we reach no conclusion concerning the trial court's findings that the unions engaged in bad faith or conditional bargaining, and that the unions waived the opportunity to meet and confer on alternatives to or repeal of Fresno City Charter section 809.

II. *The Attorney Fees Appeal (No. F026444)\**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 82.

DISPOSITION

The judgment in No. F025765 is affirmed. The order in No. F026444 is affirmed. The City's cross-appeal is dismissed as moot. The City is awarded costs on appeal.

Harris, J., concurred.

**ARDAIZ, P. J.**—I respectfully dissent from the majority view with respect to whether Fresno City Charter section 809 is a matter within the scope of representation. The majority view is extremely well presented and I agree with my colleagues' expression that "The question whether Fresno City Charter section 809 is a matter within the scope of representation is, in our opinion, a close and difficult one." (Maj. opn., *ante*, at p. 94.) However, I disagree with the following expression in the majority opinion.

"On the one hand, the eight-city formula only establishes 'a *policy* of parity' between local firefighter and police wages and those in other large California cities. [Citation.] As such, it merely sets the City's initial bargaining position, as the unions recognize. Establishment of an initial bargaining position clearly would seem to be in the nature of a 'general managerial policy decision' exempt from the meet-and-confer requirements of section 3505 pursuant to section 3504, in the same way, for example, the composition of the City's negotiating committee would be exempt from mandatory bargaining. [Citations.] Fresno City Charter section 809, in fact, only establishes wages directly when the collective bargaining process has broken down and impasse on the issue of wages has resulted. *Then*, and outside of the collective bargaining process, Fresno City Charter section 809 becomes a wage-setting provision; before that time, it merely establishes a mandatory *bargaining position* for the City.

"It is in this sense that the trial court correctly observed, in support of its finding that repeal of Fresno City Charter section 809 was merely a permissive subject of bargaining: 'The repeal of Charter section 809 did not place any impediments to future meet and confer under [MMBA] and the only effect the repeal . . . had was to require the parties in the future to meet and confer in good faith . . . .'

"Different considerations would be involved if the charter section in question actually set wages, as is the case in some prevailing wage charter provisions. [Citation.] In those cases, the charter provision establishes the wages, and repeal of the charter section would be subject to negotiation [citation]; in the present case, Fresno City Charter section 809 does not

purport to set wages. As such, the literal terms of Fresno City Charter section 809 would not bring it within the statutory 'scope of representation.' " (Maj. opn., *ante*, at pp. 94-95, fns. omitted.)

The majority view then acknowledges that although the eight-city minimum in the present case became the actual wage incorporated into the memorandums of understanding (MOU's) "in some instances," nevertheless it is not the practical effect of the provision that controls but rather the conclusion as to whether it is a statement of "fundamental labor policy." Finding that it is an expression of labor policy, the majority then concludes that it is not a mandatory subject of bargaining and therefore not within the scope of representation within the meaning of the Myers-Milias-Brown Act (MMBA, Gov. Code § 3500 et seq.).

With all due respect, I believe that interpretation distorts the concept of scope of representation as it applies to wages and is inconsistent with *People ex rel. Seal Beach Police Officers Assn.* v. *City of Seal Beach* (1984) 36 Cal.3d 591 [205 Cal.Rptr. 794, 685 P.2d 1145] (hereinafter *Seal Beach*). In reference to Government Code section 3504, which defines the scope of representation to include "all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment," the court in *Seal Beach* said: "We conclude that the city council was required to meet and confer with the relators before it proposed charter amendments which affect matters within their scope of representation. The MMBA requires such action and the city council cannot avoid the requirement by use of its right to propose charter amendments." (36 Cal.3d at p. 602.) The majority view finds a distinguishing characteristic in the words of Fresno City Charter section 809 that "salaries of the members of the police and fire departments of the city shall be fixed annually at an amount *not less than the average monthly salaries . . . .*" (Italics added.) Using the provisions of a 1990 through 1991 MOU, the majority conclude that because that MOU merely adopts the provisions of Fresno City Charter section 809 as the basis for the salary under the MOU, the calculation of salaries was done through negotiation and not through the charter provision. Here is where I get lost. Just because the MOU refers to the charter provision does not lead me to the conclusion that the provision of charter section 809 is not a salary setting provision. In my view, the *only* purpose of the salary reference in charter section 809 was to establish an agreed upon or accepted resolution of salaries. The fact that the unions argue that it would be theoretically regarded as a "floor from which bargaining over wages could begin" (maj. opn., *ante*, at p. 94, fn. 10, referring to union brief) does not, in my view, change its nature as a salary-setting provision.

The majority opinion strives to distinguish a charter provision that requires police and fire department employee wages " 'to be fixed annually at an amount not less than . . . .' " from the holding in *Seal Beach* that a provision setting wages is subject to a mandatory meet-and-confer requirement—in other words, the majority contend that a provision that expressly sets a wage (*City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898 [120 Cal.Rptr. 707, 534 P.2d 403]) is somehow distinguishable from one which sets some type of minimum wage. To the contrary, as noted by Justice Clark in *San Francisco Labor Council* v. *Regents of University of California* (1980) 26 Cal.3d 785, 790 [163 Cal.Rptr. 460, 608 P.2d 277], "A statute requiring payment of prevailing wages or more *is effectively a salary setting statute*. Public agencies' use of taxpayers' funds to pay in excess of a prevailing wage is unwarranted, and while the statute purports to establish a minimum wage, *it in effect determines the wage*." (Italics added.)

The effect of the majority opinion is to conclude that the provision of Fresno City Charter section 809, which concerns a minimum wage determination, is an expression of a general managerial decision which would not be within the scope of representation. "Federal and California decisions both recognize the right of employers to make unconstrained decisions when fundamental management or policy choices are involved. . . . [M]anagement decisions that 'lie at the core of entrepreneurial control' or are 'fundamental to the basic direction of a corporation enterprise' should be excluded from the mandatory bargaining requirements of the NLRA. [Citation.] Thus federal cases have held an employer need not bargain about a decision to shut down a plant for economic reasons [citation], nor about a decision to cancel a contract with a customer, even though layoffs result from such cancellation [citation]." *Building Material & Construction Teamsters' Union* v. *Farrell* (1986) 41 Cal.3d 651, 663 [224 Cal.Rptr. 688, 715 P.2d 648].)

In placing the charter provision in question within the context of a fundamental managerial policy, the majority view concludes that the City of Fresno (City) was not required to negotiate because the issue was not one of wages. In effect, it was a subject of permissive negotiation. I infer that the import of the majority view is that the charter provision in question is a policy decision as to where to start discussions as to wages (not unlike an opening offer in negotiations.

While I might agree that an employer's opening position in negotiations is not itself a subject of negotiation, that begs the question. The unions do not claim the right to negotiate the City's opening position; rather, they claim the right to meet and confer on the minimum wage the City can pay their

members. The subject matter here is wages and wages are matters within the scope of representation. I do not know what could more directly address the issue of wages than a statute that purports to establish a minimum wage. As noted by Justice Clark, "it in effect determines the wage." *(San Francisco Labor Council v. Regents of University of California, supra,* 26 Cal.3d at p. 790.) Therefore, I cannot separate such a recognition from the conclusion that the provision in the instant case is also a wage-setting provision.

The practical consequence of the majority view is to say a decision as to a minimum wage is a management decision so only whether to pay more than the minimum wage offered is the subject of mandatory negotiations. The problem with this position is that, in this view, the employer would never have to negotiate on the minimum it chose to pay because that would always be a management decision. That cannot be the law. A minimum wage is still a wage, and the MMBA requires covered employers to meet and confer about wages.

I find the determination that this is a wage-setting provision to be amply supported by the reality of its history. At argument, the unions expressed without challenge that the provision of Fresno City Charter section 809 regarding salaries had been the accepted level in virtually every MOU since the inception of charter section 809. The obvious effect of the provisions of charter section 809 was to minimize labor strife on what is commonly one of the most contentious issues in labor negotiation—money. Certainly, the City had a financial incentive to eliminate the provision because of its rising labor costs. Given section 809's treatment by the parties historically and its statutory effect of restricting the City's ability to go below the average set in charter section 809, the City would never be able to gain leverage in its negotiations on salaries so long as section 809 was in place. However, regardless of the wishful thinking of the unions, they would also have a difficult time in gaining leverage in negotiations, even with section 809 in place: history shows the unions have seldom exceeded the section 809 minimums.

I cannot reach the conclusion that the wage provision herein was simply an expression of fundamental labor policy and its repeal a managerial decision that was not within the scope of representation. As noted in *Building Material & Construction Teamsters' Union v. Farrell, supra,* 41 Cal.3d. at page 660, ". . . the principal purposes of the MMBA's mandatory bargaining requirements are to promote communication between public employers and employees and to improve personnel management." *Building Material* also states, "If an action is taken pursuant to a fundamental

managerial or policy decision, it is within the scope of representation only if the employer's need for unencumbered decisionmaking in managing its operations is outweighed by the benefit to employer-employee relations of bargaining about the action in question." (*Ibid.*) Clearly, employers would always prefer unencumbered decisionmaking in management of operations, but such an exception cannot swallow the rule by allowing the employer to designate with impunity what is an operational management decision. Such an interpretation would subsume wage negotiations and other working conditions.

I conclude this is a wage-setting provision and that the fact that it utilizes the words, "not less than" does not change its nature. I conclude that the provision of Fresno City Charter section 809 regarding wages was the subject of mandatory meet and confer. This takes us to the same result reached in *Seal Beach*, ". . . the city council was required to meet and confer with the relators before it proposed charter amendments which affect matters within their scope of representation. The MMBA requires such action and the city council cannot avoid the requirement by use of its right to propose charter amendments." (*Seal Beach*, *supra*, 36 Cal.3d at p. 602.)

This is not to say, and *Seal Beach* does not require, that a charter provision cannot be adopted or repealed simply because it affects wages. It does recognize that, in reconciling the provisions of the MMBA with the provisions of the California Constitution, article XI, section 3, subdivision (b) regarding the constitutional power of city councils to propose charter amendments, the two must be reconciled in a way that accommodates the goals of each. In effect, the City herein was required to meet and confer with the unions on the subject of repeal of Fresno City Charter section 809. The fact that such negotiations ultimately may have proven fruitless does not change the requirements of the MMBA that such discussions be undertaken.

I make no observation about the relative merits of either side's position in this negotiation except to note that labor negotiations do not turn on logic, they turn on experience, to paraphrase Justice Oliver Wendell Holmes. And experience shows us that discussion is better than strife, and amicable resolution would be better than what has happened in this case. The City chose to create Fresno City Charter section 809 as a means of setting wages and I cannot, in good conscience, transmute it into a management decision that is exempt from negotiation. Further, the will of the community has been amply expressed on this issue, which is a sobering reality of which the parties would be on notice in the future if the unions were granted their right to meet and confer. Posturing by either side should not prevent an amicable

solution given that reality. As I do not find support in the record for the conclusion that the unions were afforded the right to meet and confer, that impasse was impliedly reached, or that the unions engaged in bad faith negotiations or waiver, I would reverse. Because I would reverse the judgment in No. F025765, I would find No. F026444 to be moot.

A petition for a rehearing was denied April 30, 1999. Ardaiz, J., was of the opinion that the petition should be granted. The petition of defendants and appellants for review by the Supreme Court was denied July 21, 1999.